**In re James BOOKER, Patricia Booker, Debtors.**

**James BOOKER, Patricia Booker, Plaintiffs,**

**v.**

**COMMERCIAL CREDIT CORPORATION, Defendant.**

**Bankruptcy Case No. 80–00525–COL. A.P. No. 80–0531–COL.**

United States Bankruptcy Court, M. D. Georgia, Columbus Division.

Feb. 25, 1981.

F. Houser Pugh, Columbus, Ga., for plaintiffs/debtors.

Thomas L. Thompson, Jr., Columbus, Ga., for defendant.

### COMPLAINT TO AVOID LIEN

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALGIE M. MOSELEY, Jr., Bankruptcy Judge.

The question for decision is whether or not a lien arising from a security interest can be avoided under 11 U.S.C. § 522(f). If it is a purchase money security interest, the lien may not be avoided. If it is a nonpurchase money security interest, the lien may be avoided. Herein, the security interest is a nonpurchase money security interest, and, consequently, the lien may be avoided.

## FINDINGS OF FACT

On September 28, 1978, the Plaintiffs were indebted to Defendant in the sum of $2,180.09 which was secured by certain items of household furniture and furnishings belonging to the Plaintiffs. On the same date Defendant agreed to lend Plaintiffs an additional sum of money in the amount of $1,930.41, the latter amount to be used to purchase additional furniture from Dan Golden Furniture Company. A new security agreement was executed by Plaintiffs dated September 28, 1978 showing the old balance of $2,180.09 plus the $1,930.41, and after adding recording fees and credit life insurance the amount financed was $4,228.11.

The new money, $1,930.41, was paid by check issued to Plaintiff, James Booker, and Dan Golden Furniture as payment for a new G.E. refrigerator, a new G.E. washer, and new G.E. dryer, and a Bassett dining room suite. The $1,930.41 was, in fact, paid to Dan Golden Furniture Company by Defendant as the purchase price for the new items purchased from Dan Golden Furniture Company. The September 28, 1978 security agreement also contains the prior furniture of the Plaintiffs which was on a former security agreement with Defendant prior to the acquisition of the new furniture. The September 28, 1978 security agreement also contains the phrase that the described property, which includes both the old and the new furniture, is to secure payment and performance of borrowers' present and future indebtedness and obligations to lender. All of the collateral on the September 28, 1978 security agreement is claimed as exempt property.

By the time that the Plaintiffs filed their voluntary petition in bankruptcy on September 4, 1980, the Plaintiffs had paid a total sum of $2,557.98 to Defendant, and this left a balance at the time of the filing of the voluntary petition in bankruptcy of $2,700.09.

The foregoing facts are essentially as stipulated by the parties, and they also stipulate that the part of the security interest, which is a nonpurchase money security interest, should be avoided by the Court. Also, they agree that there are no issues of fact and this proceeding should be decided based on the stipulations and documents entered. The Plaintiffs and the Defendant have each filed a motion for summary judgment. Neither Plaintiffs nor Defendant, in their respective briefs, have cited any cases to the Court.

## CONCLUSIONS OF LAW

1. The Defendant does not have a purchase money security interest because the security agreement contains other collateral than the collateral for which the Defendant advanced funds.

2. The Defendant does not have a purchase money security interest because the security agreement secures a pre-existing claim or antecedent debt in addition to the new indebtedness incurred on September 28, 1978, the date of the new contract.

3. The Defendant does not have a purchase money security interest because the security agreement provides that the security interest in the collateral secures payment and performance of borrowers' present and future indebtedness and obligations to Defendant.

4. Defendant has a nonpurchase money security interest in collateral claimed as exempt, and the lien of this nonpurchase money security interest may be avoided under 11 U.S.C. § 522(f)(2).

## DISCUSSION

The parties seem to contend that the September 28, 1978 security agreement is in two separate parts, the old indebtedness and the old collateral being one part, and the new indebtedness and new collateral being the other part. If Plaintiffs prevail on their contention that the $2,557.98 paid should apply first to the new money, $1,930.41, and the new collateral, then the new collateral has been paid for and nothing is owed to Defendant. If Defendant prevails on its contention that the $2,557.98 paid should apply first to the old money, $2,180.09, and the old collateral, then the

old collateral has been paid for and Plaintiffs continue to owe Defendant the purchase price of the new collateral.

The contract, however, is not divided into two parts, but is one contract and must be construed as such without any reference to prior transactions between the Plaintiffs and Defendant. This being so, it is readily apparent that the Defendant does not hold a purchase money security interest.

The Court is not aware of any definition in the Bankruptcy Reform Act of 1978 defining nonpurchase money security interest as used in 11 U.S.C. § 522(f)(2). There is a definition of purchase money security interest in the Uniform Commercial Code, Georgia Code § 109A–9–107 as follows:

"A security interest is a 'purchase money security interest' to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price; or ·
(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."

If Defendant's security interest measures up to this definition, it is a purchase money security interest; if it does not measure up, it is a nonpurchase money security interest.

Subsection (a) of Georgia Code § 109A–9–107 is not applicable because the Defendant is not the seller, but Subsection (b) is applicable because the Defendant is the person that made an advance. Most of the reported cases construing the definition of a purchase money security interest are in a context where the issue is whether or not the security interest must be filed for perfection, if not a purchase money security interest, it must be perfected by filing, and if it is a purchase money security interest, it is perfected without filing. These cases are helpful in reaching the conclusions reached herein, as we are interested in determining if the security interest is in fact a nonpurchase money security interest and thus avoidable under 11 U.S.C. § 522(f)(2). Defendant herein did timely file a financing statement, but that is of no consequence, as

we are dealing with the avoidance of a nonpurchase money security interest in the new Bankruptcy Code under 11 U.S.C. § 522(f)(2) and not dealing with the necessity of perfection by filing.

With reference to § 9–107(b), Defendant did make an advance, but this did not enable the Debtor to acquire rights in *all* of the collateral, it enabled the Debtor to acquire rights only in four items of the collateral. The Debtor already had rights in the other collateral. The language is plain, and if a security interest could be part purchase money and part nonpurchase money, it would lead to innumerable cases where courts would be required to sift through facts to determine what part of the collateral was purchase money collateral and what part was not. The language of the section itself does not intend such a result nor did the draftsmen of the Uniform Commercial Code intend such a result as their official comment numbered 2 commenting on § 9–107 of the Uniform Commercial Code says:

"2. When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This section therefore provides that the purchase money party must be one who gives value 'by making advances or incurring an obligation': *the quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt.*" (Emphasis added.)

The contract under consideration here cannot be a purchase money security interest because the security interest was taken as security for or in satisfaction of a pre-existing claim or an antecedent debt. Even if the former collateral for the pre-existing claim were not included in the instant contract, this would not be a purchase money security interest because it would include a pre-existing claim or antecedent debt.

In reaching the conclusion that the Defendant does not have a purchase money security interest in any of the collateral we rely heavily upon *In re Manuel*, (5th 1975)

507 F.2d 990, 16 U.C.C. Rep. 493, and *In re Simpson*, 4 U.C.C. Rep. 243, the former opinion speaks highly of the latter and its "inherent reasonableness." In the former the creditor was the seller and in the latter the creditor was a party making advances. *Manuel* is somewhat muddled by a T.V. set, and the last paragraph of the opinion is:

> "We express no view as to whether a valid purchase money security interest was created with respect to the TV set. Nothing we say is to be taken as a holding as to that."

Nevertheless, it is clear that if the issue as to the T.V. set had been preserved on cross appeal the security interest in the T.V. set would not have been held to be a purchase money security interest, otherwise, the following paragraph in the opinion would have no meaning:

> "*A plain reading of the statutory requirements* would indicate that they require the purchase money security interest to be in the item purchased, and that, as the judges below noted, the purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created, if the vendor is to be protected despite the absence of filing. Except as to the TV set, *if at all*, the interest here is not a 'purchase money security interest' because it is not taken or retained by the seller of the collateral solely to secure all or part of *its* (emphasis supplied) price. Roberts attempted to make collateral secure debt other than its own price. The statutory exception does not reach the case." (Emphasis added.)

In the same tenor the following is in *Simpson*:

> "One of the purposes of the code is to 'simplify, clarify and modernize the law governing commercial transactions.' ... One of the few exceptions to the requirement that notice by filing be a prerequisite to perfection of a security agreement is the purchase money security interest under certain conditions. If a vendor or lender desires to take advantage of this non-filing requirement, the burden should be on him to prepare a simple instrument which shall be *a pure* purchase money security agreement without attempting to burden it with complicated and ambiguous impedimenta. Much of the litigation which filled our courts under pre-code law [U.C.C.] was due to the effort of adroit drafters to determine how far they could go in concocting instruments that would give maximum rights to vendors and lenders while still qualifying as conditional sales contracts and thus avoiding the necessity of filing. It is to be hoped that such antics will not occur under the Code [U.C.C.]." (Emphasis added.)

Having sought to apply "a plain reading" of Georgia Code § 109A–9–107(b) and recognizing that one of the purposes of the Uniform Commercial Code is to "simply, clarify and modernize the law governing commercial transaction," Georgia Code § 109A–1–102(2)(a), the security agreement of Defendant is just not a purchase money security interest, it is a nonpurchase money security interest and may be avoided under 11 U.S.C. § 522(f)(2).

An order is entered simultaneously herewith.