In re Douglas Howard BECHEN, dba Self-Employed Farrier, and Jerry Lynne Bechen, aka Jerry Lynne Knutson, Debtors.

Douglas Howard BECHEN and Jerry Lynne Bechen, Plaintiffs,

v.

LIVESTOCK STATE BANK, ARTESIAN, SOUTH DAKOTA, Defendant.

Bankruptcy No. 480–00270.
Adv. No. 481–0002.

United States Bankruptcy Court, D. South Dakota.

June 19, 1981.

Robert W. Swank, Hanson, Kaye, Stiles & Anderson, Mitchell, S.D., for plaintiffs.

David R. Gienapp, Arneson, Issenhuth & Gienapp, Madison, S.D., for defendant.

PEDER K. ECKER, Bankruptcy Judge.

Douglas Howard Bechen and Jerry Lynne Bechen, hereinafter Debtors, filed a joint petition for an order for relief in a Chapter 7 bankruptcy. Their attorney, Robert W. Swank, filed a Complaint to Avoid Liens that impair Debtor's exemptions pursuant to 11 U.S.C. § 522(f)(2)(A) and (B). Debtors allege that Defendant, Livestock State Bank, hereinafter Bank, has a nonpossessory, nonpurchase-money security interest in tools of the trade of Debtor.

Bank's Amended Answer by Attorney David R. Gienapp alleges: first, a general denial; second, that the money borrowed by Debtors to purchase their pickup represents purchase money and is the same personalty described in Bank's security agreement; third, that the obligation referred to in Debtor's Complaint was entered into prior to October 1, 1979, the effective date of the Bankruptcy Code. Consequently, 11 U.S.C. § 522(f)(2)(A) and (B) are not applicable to this obligation. This Bankruptcy Court held a trial on Debtors' Complaint to Avoid Liens. At the trial, this Bankruptcy Court received evidence, heard testimony from witnesses and benefited from oral argument of counsel. This Bankruptcy Court took the matter under advisement.

Debtor Douglas Bechen's occupation is a farrier. He has been a farrier for the past eight years. He travels 20 to 25 thousand miles a year in southeastern South Dakota to shoe horses for customers. Debtor owns and uses a 1974 Ford F–100 pickup to travel around to customers. Debtor claims that his 1974 Ford F–100 pickup truck is a portable shop that contains the tools of his trade. Bolted to the pickup truck bed is a 400-pound gas forge and a large anvil. The 1974 pickup truck is also used to carry a supply of horseshoes. Essentially, the pickup truck, has been modified and improved to be a traveling farrier shop. Debtor insists that he needs his pickup truck in order to continue to do business as a farrier. He claimed the pickup, as equipped, exempt on Schedule B–4 of his bankruptcy petition pursuant to S.D.C.L. 43–45–4.

On December 8, 1973, Debtors received a loan from Bank for $3,750.00 to purchase a 1974 Ford F–100 pickup. From approximately 1973 to the time Debtors filed their

bankruptcy petition, Debtors had "other outstanding loans" from Bank for school, living expenses, supplies for the business, mother's illness and transmission and motor repairs for the 1974 Ford F–100 pickup. On June 17, 1974, the pickup truck loan was renewed and consolidated with "other outstanding loans". The new balance of Debtor's loan with Bank was $6,610.12. Debtors renewed and consolidated loans with Bank on November 29, 1976, and June 19, 1979. Each time Debtors renewed and consolidated their loans, their "other outstanding loans" were stamped "paid by renewal". When the "other outstanding loans" were consolidated and renewed with the pickup truck loan, Bank kept a security interest in the pickup truck.

The dispute between the parties to this lawsuit does not involve the topper on the pickup truck or Debtors' livestock.

### DEBTORS' ARGUMENTS

Debtors seek to avoid a lien pursuant to 11 U.S.C. § 522(f)(2)(B). This section provides in part:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(2) a nonpossessory, nonpurchase-money security interest in any—

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;".

Debtor argues his pickup truck is a tool of the trade. Debtor contends that possession and use of the pickup truck is necessary to carry on his occupation. Debtor maintains he needs his specially equipped pickup truck to do the work of his customers. Debtor contends his pickup truck is distinguishable from a normal vehicle in that it is specially equipped for his occupation. There is a 400-pound gas forge and a large anvil bolted to the bed of the pickup truck.

Second, Debtors contend that Bank no longer has a purchase-money security interest in their pickup truck. Debtors maintain that when "other outstanding loans" were consolidated with the pickup truck loan, stamped "paid by renewal", and new money was advanced, that the pickup truck loan lost the characteristics of a purchase-money loan.

### BANK'S ARGUMENTS

First, Bank's Answer alleges a general denial.

Second, Bank alleges by Defendant's Exhibit No. 1 that a balance of $570.96 due on the pickup truck can be traced through the various renewals. Therefore, Bank maintains it has a purchase-money security interest.

Third, that 11 U.S.C. § 522(f) is not applicable to this obligation because it was entered into prior to October 1, 1979, the effective date of the Bankruptcy Code.

### ISSUES

1. Whether Debtor's pickup truck is a tool of his trade.

2. Whether Bank is the holder of a purchase-money security interest in Debtor's pickup truck in light of the subsequent loan transactions.

3. Whether retrospective application of 11 U.S.C. § 522(f) to avoid a lien antedating October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, violates the due process clause of the Fifth Amendment to the United States Constitution.

### CONCLUSIONS OF LAW

#### (1) *Tool of the Trade*

The first issue raised by the parties is whether Debtor's pickup truck is a tool of his trade. Pursuant to S.D.C.L. 43–45–4, Debtor has claimed exempt his 1974 Ford F–100 pickup truck. Bank has not objected to this claim of exemption. 11 U.S.C. § 522(f)(2)(B) provides that a debtor may avoid a nonpossessory, nonpurchase-money

security interest in any tool of the trade of the debtor. Debtor claims his pickup truck is a tool of the trade. Bank denies this claim.

In deciding this question, other courts have looked at the facts and circumstances of each case. In the case of *In Re Meyers*, 2 B.R. 603 (Bkrtcy. 1 C.B.C.2d 470, 1980), a Michigan bankruptcy court concluded that the debtor's truck did not qualify as a tool of the trade because he used the truck only for transportation to and from his place of work. The Michigan court found other means of transportation were available to the debtor; consequently, the loss of the truck would not prevent the debtor from continuing to pursue his trade.

The *Meyers* decision raises a question in this case of whether a loss of the pickup truck will prevent Debtor from continuing to pursue his trade. This Court finds the facts of *Meyers* are distinguishable from this case because the debtor in *Meyers* used a forklift in his job, not his truck. The debtor in *Meyers* only used his truck to drive to and from work. Whereas Debtor in this case uses his pickup truck not only to get to the place of customer work, but to perform the services of a farrier. When he arrives at the place of his customer, he needs the gas forge and anvil bolted to the bed of the pickup truck and farrier tools and supplies to perform his services. It appears evident from these facts that the loss of the pickup would prevent Debtor from carrying on his trade.

In the case of *In Re Goosey*, 10 B.R. 285, (Bkrtcy.D.C.Neb.1981), David L. Crawford, Bankruptcy Judge, the Court held the automobile of an insurance salesman was exempt and a tool of the trade of the debtor. The facts in *Goosey* indicated that a large number of the debtor's clients were farmers living outside the state. As part of the debtor's job, he was required to submit property photographs and accomplish on-farm inventories and claim adjustments. The *Goosey* decision also took into consideration that ninety per cent of the automobile's use was the product of the debtor's business activities.

The *Goosey* decision is similar to this case in that both debtors need their vehicles to travel to customers' residences in order to perform their services. Debtor in this case needs his pickup truck even more than the debtor in *Goosey* because here Debtor needs the use of special equipment attached and arranged in the pickup to perform farrier services.

This Bankruptcy Court holds that Debtor's pickup truck is a tool of his trade because its possession and use are necessary for him to carry on his trade as a farrier. The facts indicate that Debtor needs the pickup to contact customers and that it is specially equipped with the necessary tools of a farrier. This Court's holding furthers the philosophy behind 11 U.S.C. § 522(f) lien avoidance and S.D.C.L. 43–45–5(4) tool of the trade exemption, which is to protect the debtor's exemptions, discharge, and fresh start.

### (2) Purchase Money

The second issue raised by the parties is whether Bank is a holder of a purchase-money security interest in Debtor's pickup truck in light of the subsequent loan transactions.

The case of *In Re Booker*, 9 B.R. 710, (Bkrtcy.M.D.Ga.1981), is dispositive of the second issue raised by the parties. The facts in *Booker* are similar to the facts of this case. Debtor files a complaint seeking to avoid creditor's liens on the debtor's interest in collateral claimed as exempt. In *Booker*, as here, debtors are indebted to creditor for money secured by certain items of property that could be claimed exempt. In *Booker*, it was household furnishings; in this case, it's the tool of the trade of Debtor, both avoidable lien situations. In *Booker*, as here, the creditor advanced new money and the parties entered into a new security agreement which contained the same collateral as the previous security agreement.

In *Booker*, page 711, the creditor contends that:

"the new security agreement is in two separate parts, the old indebtedness and the old collateral being one part, and the new indebtedness and new collateral being the other part."

Bank in this case is making the same contention. Bank argues by Defendant's Exhibit No. 1, "a breakdown of Debtors' loans with Bank", and Defendant's Exhibit No. 3, "a Statement of Loan", that the June 19, 1979, security agreement is in two parts. One part being the old indebtedness of $570.96, and the old collateral the pickup truck. The other part being the new indebtedness and new collateral.

This Bankruptcy Court finds, as did the Court in *Booker*, page 712, that:

"The contract, however is not divided into two parts, but is one contract and must be construed as such without any reference to prior transactions between the Plaintiffs and Defendant. This being so, it is readily apparent that the Defendant does not hold a purchase money security interest."

The Court in *Booker* went on to note that there is not a definition of nonpurchase-money security interest as used in 11 U.S.C. § 522(f)(2) in the Bankruptcy Reform Act of 1978. But there is a definition of purchase money security interest in most states' Uniform Commercial Code. South Dakota has the same provision as applied by the Court in the *Booker* case. S.D.C.L. 57A–9–107 provides in part, as is pertinent to this case, that:

"A security interest is a "purchase money security interest" to the extent it is . . .

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."

If Bank is to prevail in this case, its security agreement of June 19, 1979, must meet the definition of "purchase money security interest" as contemplated by S.D.C.L. 57A–9–107(b).

■ This Bankruptcy Court finds, as did the Court in *Booker* on page 712, that:

"The contract under consideration here cannot be a purchase money security interest because the security interest was taken as security for or in satisfaction of a pre-existing claim or an antecedent debt. Even if the former collateral for the pre-existing claim were not included in the instant contract, this would not be a purchase money security interest because it would include a pre-existing claim or an antecedent debt."

In light of the *Booker* decision, S.D.C.L. 57A–9–107, and the facts as they were presented to this Bankruptcy Court, it cannot be concluded that Bank is a holder of a purchase money security interest in Debtors' pickup truck.

### (3) *11 U.S.C. Section 522(f)*

The third issue raised by the parties is whether retrospective application of 11 U.S.C. § 522(f) to avoid a lien antedating October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, violates the due process clause of the Fifth Amendment to the United States Constitution.

■ This Bankruptcy Court has held *In Re Stump*, 8 B.R. 516, (Bkrtcy.1981), that a retrospective application of 11 U.S.C. § 522(f) to avoid a lien antedating October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, is constitutional. In a lengthy Memorandum Decision this Bankruptcy Court held: first, that Congress intended a retrospective application of § 522(f); second, a retrospective application of § 522(f) protects a debtor's exemptions, his discharge and his fresh start; and third, that retrospective application of § 522(f) is not a taking of a property right of a creditor because it merely alters a creditor's right to enforce a specific remedy and recover specific property. For purposes of this decision, the Court reaffirms the holding of *In Re Stump* that a retrospective application of 11 U.S.C. § 522(f) to avoid a lien antedating October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, is constitutional.

## CONCLUSION

First, this Bankruptcy Court holds that Debtor's specially equipped and supplied pickup truck is a tool of his trade because its possession and use are necessary for him to carry on his trade as a farrier.

Second, this Bankruptcy Court holds that Bank does not have a purchase money security interest in Debtors' pickup truck because the security interest was taken as security for or in satisfaction of a pre-existing claim or an antecedent debt.

Third, that a retrospective application of 11 U.S.C. § 522(f) to avoid a lien antedating October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, is constitutional because: 1) Congress intended a retrospective application; 2) it furthers the debtor's fresh start; and 3) retrospective application of § 522(f) is not a taking of a property right; it merely alters a creditor's right to enforce a specific remedy and recover specific property.

In light of this Court's holdings, Debtors are entitled to avoid Bank's nonpossessory, nonpurchase-money security interest in Debtor's tool of the trade.

This Decision shall constitute Findings of Fact and Conclusions of Law with Debtors' Attorney directed to supply an order consistent herewith.