Fred H. Hodges, Jr., Berlin, Hodges & Greene, P. C., Macon, Ga., for defendant.

**In the Matter of Elizabeth KING, Debtor.**

**Elizabeth KING, Plaintiff,**

v.

**CITIZENS AND SOUTHERN NATIONAL BANK, Defendant.**

**Bankruptcy No. 81–50806.**

**Adv. No. 81–5178.**

United States Bankruptcy Court, M. D. Georgia, Macon Division.

April 13, 1982.

## MEMORANDUM DECISION ON COMPLAINT TO AVOID LIEN

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

Before the Court is the complaint of Elizabeth King, Plaintiff, seeking to avoid the security interest of the Citizens and Southern National Bank, Defendant, under Section 522(f)(2) of the Bankruptcy Code, 11 U.S.C.A. § 522(f)(2) (West 1979). The Plaintiff's complaint was filed on September 18, 1981, and the Defendant's answer was filed on October 6, 1981. The matter came on for pre-trial conference on October 23, 1981, and by agreement of counsel has been submitted to the Court for decision upon a stipulation of facts and briefs.

After consideration of the evidence and the briefs of counsel, the Court has this day entered an order avoiding the security interest of the Defendant. In support of its order, the Court attaches the following findings of fact and conclusions of law. To the extent any findings of fact constitute conclusions of law, or any conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

The following facts were stipulated by the parties:

On November 14, 1975, the Plaintiff signed a promissory note in favor of the Defendant in the total amount of $7,310.52 at an APR of 11.21 percent. On the same date, the Plaintiff executed a security agreement in favor of the Defendant granting to it a security interest in her 1974 Dodge Colt, which she owned prior to said loan, and certain household goods which are now the subject matter of this adversary proceeding. Said household goods were purchased by the Plaintiff from Loosier of Macon, Inc. from a portion of the proceeds of said loan, as evidenced by a purchase-money check issued by the Defendant to the Plaintiff and Loosier of Macon, Inc. in the amount of $3,485.72. The November 14, 1975 promissory note established a payment schedule of 36 monthly installments in the amount of $203.07.

On November 18, 1976, the Plaintiff executed another promissory note in the sum of $7,630.20 in favor of the Defendant and executed another security agreement. Neither the Plaintiff nor the Defendant have a copy of the November 18, 1976, promissory note, but said note is referenced in the security agreement. The proceeds of the November 18, 1976 loan were disbursed, in part, as follows:

$5,017.45 to pay off the November 14, 1975 promissory note;

$222.09 to the Plaintiff and Rhodes Furniture;

$181.56 to the Plaintiff and Davison's;

$480.67 to the Plaintiff's checking account.

The loan application, executed in conjunction with this loan, indicates that the APR was 11.24 percent and that a new payment schedule of 36 months at $211.95 per month was established.

On February 2, 1978, the Plaintiff executed a promissory note in favor of the Defendant in the amount of $3,778.56 and another security agreement covering "all HHG's & appliances."

Neither the Plaintiff nor the Defendant has a copy of the promissory note referenced in said security agreement.

According to the loan application concerning said loan, the purpose of the loan was to "refinance" and a new payment schedule of 36 months at $104.96 was established.

On January 29, 1979, the Plaintiff executed a promissory note in favor of the Defendant in the amount of $3,887.28 at an APR of 12.64 percent. Simultaneously therewith, the Plaintiff executed another security agreement. It is this promissory note upon which the Defendant is basing its present claim of indebtedness against the Plaintiff.

At the time of the original loan transaction in November, 1975, the Defendant filed a financing statement in the Superior Court of Bibb County covering the household goods in question. The Defendant has filed no additional financing statements since November 18, 1975.

The financing statement is in error in that it refers to a 12-piece Reeves living room suite, whereas, in truth and fact, it should read a two-piece Reeves living room suite.

No one item of the household goods involved in this adversary proceeding has a value in excess of $200.00.

The Court further finds that the loan of November 18, 1976, made by the Defendant to the Plaintiff, also included the payoff of a prior indebtedness of the Plaintiff, account number 757–168–999 in the amount of $267.28.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties and the subject matter herein.

The Plaintiff herein seeks to avoid the consensual security interest of the Defendant under Section 522(f)(2) of the Bankruptcy Code, which states as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . . .

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C.A. § 522(f)(2) (West 1979).

The property in question in this adversary proceeding is household furnishings and household goods, no single item of which has a value of more than $200.00. Therefore, the Plaintiff is entitled to exempt this property, Ga.Code Ann. § 51–1301.1(a)(4) (Supp.1981), and if the security interest of the Defendant is nonpossessory and nonpurchase money, the Plaintiff may avoid it under Section 522(f)(2).

There is no dispute that the Defendant's security interest is nonpossessory. The sole issue for determination by the Court is whether the Defendant's security interest is purchase money.[1]

In Georgia, the definition of a purchase-money security interest is found at Ga.Code Ann. § 109A–9–107 (1979), which states:

A security interest is a "purchase money security interest" to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

*Id.*

The Defendant was not the seller of the household goods that serve as its collateral, so if it is to prevail, it must do so under subsection (b). Thus, for the Defendant to have a purchase-money security interest, its security interest must arise out of advances or value given by it that enabled the Plaintiff to acquire rights in the collateral.

On November 14, 1975, the Plaintiff executed a promissory note in favor of the Plaintiff in the total amount of $7,310.52. As part of the loan transaction, the Plaintiff executed a security agreement, giving the Defendant a security interest in certain household goods.[2] The household goods upon which the Defendant has a security interest were purchased by the Plaintiff from Loosier of Macon, Inc. by using part of her loan proceeds from the November 14, 1975 promissory note. The Plaintiff now seeks, in this adversary proceeding, to avoid the security interest of the Defendant in the household goods purchased from Loosier of Macon, Inc. Since the Defendant furnished the money for the Plaintiff to acquire these household goods, the Defendant would have a purchase-money security interest in them under the terms of the November 14, 1975, security agreement.

Even though Georgia law does not require the filing of a financing statement to perfect a purchase-money security interest in consumer goods,[3] the Defendant filed a financing statement on November 18, 1975, covering the household goods.

The November 14, 1975, promissory note was paid off on November 18, 1976, when the Plaintiff executed a "renewal" note. This new promissory note paid off a separate prior indebtedness of $267.28, paid off the November 14, 1975, promissory note in the amount of $5,017.45, and advanced an

---

1. The stipulation of facts by the parties seems to raise the issue of the timely filing of a U.C.C. continuation statement by the Defendant. This issue is not determinative because if the Defendant's security interest is purchase money, filing is not required for its perfection. Ga. Code Ann. § 109A–9–302(1)(d) (1979).

2. The Defendant also took a security interest in one 1974 Dodge Colt, but that security interest is not before the Court.

3. *See* note 1, *supra.*

additional $884.32 to the Plaintiff. The Plaintiff executed a new security agreement at the time she signed the new promissory note which gave to the Defendant a security interest in the 1974 Dodge Colt and "All HHGs & Appliances." This security agreement makes reference to the financing statement filed by the Defendant in 1975.

On February 2, 1978, the Plaintiff once again refinanced her obligation with the Defendant. Her new obligation was in the amount of $3,778.56, and she again executed a new security agreement. This security agreement did not include the Dodge Colt and did not refer to the financing statement of November, 1975.

The final refinancing occurred on January 29, 1979. The promissory note executed this time was for $3,887.28, and once again a new security agreement was executed. This security agreement did not refer to the financing statement of November, 1975 and did not include the Dodge Colt. This January 29, 1979, promissory note is the promissory note upon which the Defendant bases its claim that it holds a purchase-money security interest in the household goods which the Plaintiff purchased from Loosier of Macon, Inc. in 1975.

A comparable case was presented to the Columbus division of this Court in the case of *Booker v. Commercial Credit Corp. (In re Booker)*, 9 B.R. 710 (Bkrtcy.M.D.Ga.1981). In *Booker*, the debtors had a prior indebtedness to Commercial Credit Corporation (hereinafter C.C.C.) which was collateralized by certain property already in the possession of the debtors. The debtors then borrowed an additional sum from C.C.C. to enable them to purchase a refrigerator, a washer, a dryer, and a dining room suite. This additional advance was, in fact, used to purchase the new household goods. As part of this transaction, the debtors executed a new promissory note covering both the old indebtedness and the additional advance, and they executed a new security agreement, giving C.C.C. a security interest in the old collateral as well as a security interest in the new household goods (refrigerator, washer, dryer, and dining room suite). The Court in *Booker* found the security interest to be nonpurchase money because the collateral secured a pre-existing or antecedent debt.

The question of the effect of refinancing, combined with the extension of additional credit, on the purchase-money nature of a security interest has also been considered by the United States District Court for the Southern District of Georgia. *Safeway Finance Co., Inc. v. Ward (In re Ward)*, 14 B.R. 549 (S.D.Ga.1981).

In a very thorough and well reasoned opinion, the District Court found that when parties refinance existing contracts and increase the obligations by way of additional advances, they in essence execute novations of the old debts and destroy any purchase-money nature of the debts refinanced. 14 B.R. at 552. Simply put, such a refinancing extinguishes the old obligation and does not enable the debtor to acquire rights in collateral.

The Defendant asserts that its promissory note dated November 18, 1976, is a renewal and contends that it thus retains its purchase-money nature. Renewal has been discussed by the Supreme Court of Georgia, which stated as follows:

> Not only the definition of renewal, but also its application in the cases cited and in similar cases, carried the idea that an obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be. There may be a change of parties. There may be an increase of security, but there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the obligation. If the obligation changes, there can be no renewal, because there can be no such thing as the re-establishment of an old obligation by the creation of a new obligation different in character.

*Lowry National Bank v. Fickett*, 122 Ga. 489, 492, 50 S.E. 396 (1905); *See also Knight v. First Federal Savings & Loan Association, Savannah*, 151 Ga.App. 447, 260 S.E.2d 511 (1979).

From a consideration of this authority and the circumstances of the Defendant's November 18, 1976, refinancing, which made additional advances to the Plaintiff, the Court must find that the November 18, 1976, transaction was not a renewal. In effect, it was a novation of the original purchase-money contract. It increased the amount of the debt owed by the Plaintiff and gave a security interest in the Defendant's household goods. It was a valid contract supported by consideration and thus contained all of the elements for a novation. *Williams v. Rowe Banking Co.*, 205 Ga. 770, 55 S.E.2d 123 (1949). The refinancing on November 18, 1976, also paid off an antecedent debt in account number 757–168–999 of $267.28. The refinancing, in effect, extinguished the old obligation and did not result in the Plaintiff being able to acquire rights in collateral.

Two subsequent refinancings of the Plaintiff's obligations to the Defendant took place: one by execution of a new promissory note on February 2, 1978, and the other by execution of a new promissory note on January 29, 1979; and in each instance, a new security agreement was signed. Each of these new security agreements changed the Defendant's collateral in that the 1974 Dodge Colt no longer served as collateral.

The security interest which is now in effect must therefore be found to be non-purchase money. It is based on a security agreement which was executed in 1979 which was part of the refinancing of a promissory note which was made in 1978, which 1978 promissory note was itself a refinancing of the November 18, 1976, promissory note. It is therefore a security interest which secures debt other than the purchase price of the Plaintiff's household goods and which secures an antecedent debt which was incorporated into the November 18, 1976, promissory note. Even if the last two agreements were truly renewals, they would be renewals of the November, 1976 promissory note which advanced additional sums, which sums were not used by the Plaintiff to acquire rights in the Defendant's collateral.

The Defendant has not relied on its claimed purchase-money security interest in dealing with the Plaintiff and cannot now claim such an interest to defeat the Plaintiff's right to avoid the Defendant's security interest.

Accordingly, the Court must find that the Defendant's security interest in the household goods of the Plaintiff is nonpossessory and nonpurchase money. Since the requirements of Section 522(f) have been met, the Court finds that the Defendant's security interest may be avoided in order to protect the Plaintiff's exemptions and thus afford to her the fresh start to which she is entitled in bankruptcy.

An order in accordance herewith is attached hereto and made a part hereof.