In the Matter of Patricia Ann FRANKLIN, Debtor.

Patricia Ann FRANKLIN, Movant,

v.

ITT FINANCIAL SERVICES, Respondent.

Bankruptcy No. 86–10234–ALB.

United States Bankruptcy Court, M.D. Georgia, Albany Division.

Nov. 21, 1986.

---

Robert L. Kraselsky, Albany, Ga., for Patricia Ann Franklin.

William A. Erwin and Betty S. Frazer, Albany, Ga., for ITT Financial Services.

## MEMORANDUM OPINION AND ORDER

ROBERT F. HERSHNER, Jr., Chief Judge.

Before the Court is the "Motion to Avoid Lien" that Patricia Ann Franklin, Movant, filed with the Court on July 11, 1986. In Movant's motion, she seeks to avoid the security interest that ITT Financial Services, Respondent, holds in a four-piece Thomasville wall unit. The parties stipulate that the only issue for the Court to decide is whether Respondent's security interest in the wall unit is a purchase-money security interest. If the security interest is a non-purchase-money security interest, Movant may avoid Respondent's security interest under section 522(f)(2)(A) of the Bankruptcy Code.[1] The motion came on for hearing before the Court on August 25, 1986, and the Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Movant purchased the wall unit from Omega Furniture Showcase on July 25, 1985. The cash price for the wall unit was $1,732.64. Movant made a down payment of $132.64 and financed the balance of $1,600 with Omega for ninety days. At the end of ninety days, Movant was to pay the $1,600 balance in full without interest. This type of financing is commonly known as "ninety days the same as cash." Under the terms of the promissory note executed on July 25, 1985, Omega took a security interest in the wall unit. Omega subsequently assigned the promissory note to Respondent.

Movant did not pay the $1,600 balance in full at the end of the ninety-day period. Instead, Movant executed a promissory note on November 27, 1985, with Respondent that financed the $1,600 balance over three years. This new promissory note provided for total payments of $3,024. Of this amount, $1,613.48 was used to pay off the July 25, 1985, promissory note, $60.74 was paid directly to Movant, and $711.38 was used to pay for insurance charges, loan fees, and prepaid finance charges. As part of the transaction, Movant executed a security agreement in which she gave Respondent a security interest in the wall unit, a color television, a video disc, and a camera. Movant contends that the refinancing of the July 25, 1985, promissory note destroyed the purchase-money nature of Respondent's security interest in the wall unit. Paragraph two of the November 27, 1985, security agreement provides as follows:

> 2. If this finances a balance due on a purchase money sales contract or loan, Debtor and Secured Party agree (A) that this note renews and does not discharge or extinguish the purchase money contract or loan; (B) that a purchase money security interest is retained to the extent of the balance of the purchase price due; and (C) that each payment received after the date of purchase will reduce the purchase money security interest proportionately until the expiration date three years from the purchase date. If this finances two or more purchase money contracts, the earliest purchases will be

---

1. 11 U.S.C.A. § 522(f)(2)(A) (West 1979). Section 522(F)(2)(A) provides:

   (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
   . . . .

   (2) a nonpossessory, nonpurchase-money security interest in any—
   (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

   11 U.S.C.A. § 522(f)(2)(A) (West 1979).

paid off first; smaller purchases of the same date will be paid off first.

■ To determine whether a security interest is a purchase-money security interest, the Court must look to the relevant state law. *See, e.g., Lewis v. Manufacturers National Bank of Detroit,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961); *Roberts Furniture Co. v. Pierce (In re Manual),* 507 F.2d 990, 992 (5th Cir.1975); *Bond's Jewelers, Inc. v. Linklater (In re Linklater),* 48 B.R. 916, 918, 12 Collier Bankr. Cas.2d 995, 997 (Bankr.D.Nev.1985). Section 11-9-107 of the Georgia Code defines a purchase-money security interest as follows:

A security interest is a "purchase money security interest" to the extent that it is:

(a) Taken or retained by the seller of the collateral to secure all or part of its price; *or*

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

O.C.G.A. § 11-9-107 (1982). Because Respondent was not the seller of the wall unit that serves as collateral for the November 27, 1985, security agreement, section 11-9-107(b) must be used to determine the nature of Respondent's security interest in the wall unit. Under section 11-9-107(b), Respondent must prove that its security interest arises out of advances or value it gave Movant that enabled Movant to acquire rights in the wall unit. *King v. Citizens & Southern National Bank (In re King),* 19 B.R. 409, 411 (Bankr.M.D.Ga. 1982).

In construing section 11-9-107(b) of the Georgia Code, the Court notes that Official Comment 2 to the 1972 revision of the Uniform Commercial Code states:

2. When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This Section therefore provides that the purchase money party must be one who gives value "by making advances or incurring an obligation": the quoted language *excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt.*

Official Comment 2, U.C.C. § 9-107 (emphasis added).

The Ninth Circuit Court of Appeals in *Matthews v. Transamerica Financial Services (In re Matthews),*[2] recently addressed the same issue as the one presently before this Court. In *In re Matthews,* the debtors borrowed money from a lender and used the proceeds to purchase certain household goods from a merchant. The loan was secured by the household goods. Approximately one year later, the lender agreed to refinance the original loan for a longer term. From the proceeds of the second loan, the original loan was paid off, the debtors received $63.14 in cash, and insurance charges were paid. 724 F.2d at 799. The court of appeals held that under the original loan, the lender had a purchase-money security interest in the household goods, but the refinancing of the original loan destroyed the purchase-money nature of the lender's security interest. *Id.* at 799-800. In arriving at its holding, the court noted:

The vast majority of courts that have considered the issue we face here have held that refinancing or consolidating loans by paying off the old loan and extending a new one extinguishes the purchase money character of the original loan because the proceeds of the new loan are not used to acquire rights in the collateral. *See Rosen v. Associates Financial Services,* 17 B.R. 436 (D.S.C. 1982); *In re Ward,* 14 B.R. 549 (S.D.Ga. 1981); *In re King,* 19 B.R. 409 (Bkrtcy. M.D.Ga.1982); *In re Hobdy,* 18 B.R. 70 (Bkrtcy.W.D.Ky.1982); *In re Calloway,* 17 B.R. 212 (Bkrtcy.W.D.Ky.1982); *In re Kelley,* 17 B.R. 770 (Bkrtcy.E.D.Tenn. 1982); *In re Luczak,* 16 B.R. 743 (Bkrtcy.W.D.Wis.1982); *In re Snyder,* 16 B.R. 380 (Bkrtcy.S.D. Ohio 1982); *In re*

2. 724 F.2d 798 (9th Cir.1984).

*Johnson,* 15 B.R. 681 (Bkrtcy.W.D.Mo. 1981); *In re Trotter,* 12 B.R. 72 (Bkrtcy. C.D.Cal.1981); *In re Alston,* 11 B.R. 184 (Bkrtcy.W.D.Tenn.1981); *In re Carnes,* 8 B.R. 599 (Bkrtcy.D.Okl.1981); *In re Coomer,* 8 B.R. 351 (Bkrtcy.E.D.Tenn. 1980); *In re Jones,* 5 B.R. 655 (Bkrtcy.M. D.N.C.1980); *In re Mulcahy,* 3 B.R. 454 (Bkrtcy.S.D.Ind.1980). *But see In re Stevens,* 24 B.R. 536 (Bkrtcy.D.Colo. 1982) (adopting rule that purchase money character to be determined from all surrounding circumstances); *In re Conn,* 16 B.R. 454 (Bkrtcy.W.D.Ky.1982) (purchase money character survives refinancing); *In re Chambell,* 17 B.R. 597 (Bkrtcy.W. D.Mo.1982) (refinancing agreement deemed to be same as original security agreement it refinances).

*Id.* at 800–01. *See also Schneider v. Fidelity National Bank (In re Schneider),* 37 B.R. 747 (Bankr.N.D.Ga.1984).[3]

Based upon the facts presented in the motion to avoid lien, the Court concludes that Respondent's refinancing of the July 25, 1985, promissory note destroyed the purchase-money nature of its security interest in the wall unit. The November 27, 1985, promissory note increased the amount of debt Movant owed Respondent from $1,600 to $3,024, and the November 27, 1985, security agreement gave Respondent a security interest in the wall unit and additional collateral. Movant received additional advances under the November 27, 1985, promissory note, and most importantly, loan proceeds were used to pay off the July 25, 1985, promissory note. The refinancing, in effect, extinguished the old obligation and did not result in Movant's acquisition of rights in the wall unit because Movant already had purchased the wall unit. *See In re King,* 19 B.R. at 413.

The Court has considered the language contained in paragraph two of the November 27, 1985, security agreement and concludes that it does not control the determination of the nature of Respondent's security interest. Such a determination is governed by section 11–9–107 of the Georgia Code, and a purchase-money security interest is acquired only if all of the requirements of the state law are met. The Court notes that customarily a lender drafts the language of its promissory notes and security agreements, but that language is still subject to the requirements of the state law. *See In re Matthews,* 724 F.2d at 801. Notwithstanding the language contained in paragraph two of the November 27, 1985, security agreement, the Court concludes that the security interest which Respondent holds in the wall unit is a nonpurchase-money security interest. Because the requirements of section 522(f) of the Bankruptcy Code have been met, the Court finds that Respondent's security interest may be avoided.

Accordingly; it is

ORDERED that the nonpurchase-money security interest of ITT Financial Services, Respondent, in the four-piece Thomasville wall unit of Patricia Ann Franklin, Movant, be, and the same hereby is avoided.

**3.** In considering the issue before it, the Court has reviewed the decision of *Goodyear Tire & Rubber Co. v. Staley (In re Staley),* 426 F.Supp. 437 (M.D.Ga.1977), and concludes that it does not deal with the issue at hand. The district court in *In re Staley* examined the language of a security agreement under which a debtor gave to a lender a security interest in a stereo he purchased as well as other items he might there-

after purchase under the terms of that security agreement. 426 F.Supp. at 437. Unlike Respondent, the lender in *In re Staley* did not refinance the original promissory note, and therefore the court did not address the issue of whether the refinancing of a promissory note extinguishes the purchase-money nature of a security interest.