**In re James Philias CHALLINOR, Betty Emma Challinor d/b/a Challinor Construction & Westfork Construction Co., Inc., Debtors.**

**Bankruptcy No. 87–20315.**

United States Bankruptcy Court, D. Montana.

Oct. 19, 1987.

James C. Bartlett, Kalispell, Mont., for debtors.

Helena M. Maclay, Missoula, Mont., for PCA.

Randall Ogle, Kalispell, Mont., Trustee.

ORDER

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 19th day of October, 1987.

A hearing was held October 6, 1987, on the Debtors' motion to avoid the Western Montana Production Credit Association (PCA) lien on a D–7F Cat.  Evidence, testimony and trial memoranda were entered. The record in the above entitled matter is now complete and deemed submitted.

The creditor, PCA, contends it has a purchase money security interest in the D–7F Cat and, therefore, its lien cannot be avoided pursuant to 11 U.S.C. § 522(f).  Further, the PCA asserts that the Debtors have not properly claimed an exemption for the D–7F Cat under their proposed Plan.  The Debtors claim that they may avoid the lien under § 522(f), because it is not a purchase money security interest and that they are entitled to the exemption under M.C.A. § 25–13–612(b).

The first issue which must be addressed, is whether the Debtors are entitled to an exemption for this Cat.  The Debtors did not specifically state in their Plan under which subsection of M.C.A. § 25–13–612 they were claiming an exemption.  However, he did state in court that it was needed as a tool of his trade.  The Debtors' counsel specifically stated that the Debtor was an artisan or craftsman, so the Debtors are asserting an exemption to the D–7F cat under Subsection (b) of

M.C.A. § 25–13–612. It must be determined whether the Debtors, therefore, can qualify for this exemption under Montana law. Before a ruling on this issue can be made, several key words must first be defined. Black's Law Dictionary (4th Ed.) defines mechanic as "a person skilled in the practical use of tools" or a "workman employed in shaping and uniting materials, such as wood, metal, etc., into some kind of structure, machine or other object, requiring the use of tools". *Id.* at 1132. An artisan is defined as "one skilled in some kind of mechanical craft or art; a skilled mechanic". *Id.* at 145. *Swanz v. Clark,* 71 Mont. 385, 386–388, 229 P. 1108 (1924), held that an optometrist was not a mechanic simply because he used mechanical tools, while *Kansas City Southern Ry. Co. v. Wallace,* 30 Okl. 233, 133 P. 908, 911, held that an architect was an artisan, yet *Huffman v. McDonald,* 261 S.W. 146 (Tex.Civ. App.1924), held that a subcontractor was not an artisan. In Montana, *MacDonald v. Mercill,* —— Mont. ——, 714 P.2d 132 (1986), held that a self-employed excavation contractor was entitled to exempt a backhoe and trailer, but the issue as to whether the debtor was a mechanic was not raised, since the parties stipulated to such fact. This Court holds that the terms mechanic and artisan are used as generalized terms for a number of occupations which include working with heavy equipment to clear timber. As a self-employed laborer/contractor, this Debtor qualifies as a mechanic or artisan.

The second issue that needs to be addressed, is whether the D–7F Cat is equipment that is necessary for the Debtor to carry on his trade. First, there is an absence of a dollar limit in M.C.A. § 25–13–612, and therefore any contentions along that line are immaterial. See *e.g., MacDonald v. Mercill,* supra, 714 P.2d at 135. Likewise, there is a lack of a dollar limit in Section 522(f). This Court was affirmed by the Ninth Circuit in *Rainier Equipment Finance, Inc. v. Taylor,* 73 B.R. 149, 4 Mont. B.R. 347, 351 (9th Cir. BAP 1987), when it held:

"Neither the legislative history nor persuasive case authority compel a holding that only liens on tools or implements of nominal resale value may be avoided under § 522(f)(2)(B). *See, e.g., In re Sweeney,* 7 B.R. 814 (E.D.Wis 1980); *In re O'Neal,* 20 B.R. 13 (Bankr.E.D.Mo.1982); *In re Yparrea,* 16 B.R. 33 (Bankr.D.N. Mex.1981). The absence of a dollar limit on the amount of the exemption is a problem for the Montana legislature to correct and the lack of a dollar limit on the tool of trade lien avoidance provision is for Congress to rectify. *See, In re Liming,* 797 F.2d 895 (10th Cir.1986), ('subsection [522](f) contains no express dollar limitations on the value of the items that the debtor may avoid.... We cannot place a more restrictive ... limitation ... than state law imposes, given the wording of § 522.'). (In fact the Montana Supreme Court encouraged the Montana legislature to bring the 'horse and buggy' language of the statute up to date. *MacDonald v. Merciil* [714 P.2d] at 134. And counsel for Rainier informs the panel that Montana House Bill 19 which becomes effective October 1, 1987 provides a $3,000.00 limit on the tool of trade exemption.)" *Id.,* 73 B.R. 149, 4 Mont. B.R. 347, 351 (9th Cir. BAP 1987).

Thus it is of no importance, as argued by the PCA, that the Debtor has no equity in the exempt property.

The question then turns on whether the D–7F Cat is a tool of the Debtor's trade. The Montana Supreme Court held in *MacDonald v. Mercill,* supra 714 P.2d at 134, 135:

"The use of the term 'implement' demonstrated that it may include a relatively large, complicated, and expensive item—a machine or a piece of equipment—in certain contexts.

\* \* \* \* \* \*

Today a tool is still a powered or unpowered item designed to be used by mechanics or artisans to perform a task and is manageable in size and weight so that in its normal operation it can be maneuvered or used by the operator's physical strength alone without the aid of independent motive powers and it is liable to be more expensive and require more

skill. The definition includes common hand tools such as drills, wrenches, saws, but also includes larger industrial items that may be mounted on a dolly or are pushed around on wheels or are stationery in normal operation such as table saws, lathes and welders.

\* \* \* \* \* \*

An implement is a powered or unpowered item designed to be used by a mechanic or artisan to perform a task. It may include an item that cannot be in its normal operation maneuvered by the operator's physical strength but must be used with the aid of independent motive powers."

The D–7F Cat is within the above definition as tool of the trade. Yet Montana has stated by statute that each item must be necessary to such trade to be exempt. This Court finds that the D–7F Cat is an item necessary to the Debtor's trade, and as such would qualify as an exempt tool.

■ To be able to enjoy the exemption as a tool of the trade, a Debtor must be able to avoid the lien of the creditor under § 522(f). In this case, the creditor claims a possessory, purchase money security interest in the subject D–7F Cat. A Debtor cannot avoid a lien unless said lien is a non-possessory, non-purchase money security interest. I hold the PCA did not have a possessory interest in this D–7F Cat at the time of its perfection of the security interest. On July 28, 1986, the PCA received a default judgment in favor of foreclosing its security interest in the Debtors' D–7F Cat. The PCA subsequently received a writ of execution and took possession of the Cat. The PCA now argues that pursuant to its repossession of the Cat, they hold a possessory security interest. The Debtors signed a security agreement with the PCA on March 31, 1982, which covered this collateral. Pursuant to that agreement, offered into evidence as Defendant's Exhibit H, the PCA set forth its available remedies upon default. The PCA did not have a remedy of repossession under the security agreement signed by the Debtors. The PCA did have a remedy of suit, which they pursued, and upon which they received a judicial lien and writ of execution on the subject D–7F Cat.

Three categories of liens exist which are governed by 11 U.S.C. § 522(f)(2)(B). They are: (1) a statutory lien, (2) a judicial lien, and (3) a lien created by an agreement. 11 U.S.C. § 101(30), (43) and (45). The three categories are mutually exclusive. *In re Jones*, 13 B.R. 945, 947 (Bankr.E.D.Pa. 1981). In this case the PCA did not have any language in its security agreement with these Debtors that gave it the right to possession through the security agreement. Therefore, the PCA received possession by its judicial lien. Under the Uniform Commercial Code, § 30–9–203, M.C.A., a creditor such as PCA may have a possessory security interest in the collateral only if so provided by the security agreement. *Matter of Wood*, 13 B.R. 245, 247 (Bankr.E.D. N.C.1981). The creditor's reliance on *In re Sanders*, 61 B.R. 381 (Bankr.D.Kan.1986) is misplaced. *Sanders* decided two questions. First, it correctly held that enforcement of a consensual lien through the judicial process does not convert the lien from a security interest by agreement to a judicial lien. *Id.* at 383. In *Sanders*, however, the creditor's right to possession was created by the security agreement. Thus *Sanders* held that the creditor had a possessory interest because the security agreement with the Debtor granted a right to possession, and even though ┼he lien was judicially enforced, it was still "a lien by agreement". *Id.* at 382–384. In this case, the Debtors retained the possessory right to this collateral by the security agreement, and as such, PCA only received possession through the judicial process. Under these facts, it is a non-possessory lien. *In re McFarland*, 38 B.R. 370 (Bankr.N.D. Iowa 1983), aff'd 38 B.R. 374. As a non-possessory security interest, this lien may be avoided by the Debtors if other conditions of § 522(f) are met.

■ We are now left with the purchase money security interest issue. The Ninth Circuit directly addressed this issue in *In re Matthews*, 724 F.2d 798 (1984). In *Matthews*, the Court stated:

"The vast majority of courts that have considered the issue we face here have held that refinancing or consolidating loans by paying off the old loan and extending a new one extinguishes the purchase money character of the original loan because the proceeds of the new loan are not used to acquire rights in the collateral. *See Rosen v. Associates Financial Services,* 17 B.R. 436 (D.S.C. 1982); *In re Ward,* 14 B.R. 549 (S.D.Ga. 1981); *In re King,* 19 B.R. 409 (Bankr.M. D.Ga.1982); *In re Hobdy,* 18 B.R. 70 (Bankr.W.D.Ky.1982); *In re Calloway,* 17 B.R. 212 (Bankr.W.D.Ky.1982); *In re Kelley,* 17 B.R. 770 (Bankr.E.D.Tenn. 1982); *In re Luczak,* 16 B.R. 743 (Bankr. W.D.Wis.1982); *In re Snyder,* 16 B.R. 380 (Bankr.S.D.Ohio 1982); *In re Johnson,* 15 B.R. 681 (Bankr.W.D.Mo.1981); *In re Trotter,* 12 B.R. 72 (Bankr.C.D.Cal. 1981); *In re Alston,* 11 B.R. 184 (Bankr. W.D.Tenn.1981); *In re Carnes,* 8 B.R. 599 (Bankr.D.Okl.1981); *In re Coomer,* 8 B.R. 351 (Bankr.E.D.Tenn.1980); *In re Jones,* 5 B.R. 655 (Bankr.M.D.N.C.1980); *In re Mulcahy,* 3 B.R. 454 (Bankr.S.D. Ind.1980). But *see In re Stevens,* 24 B.R. 536 (Bankr.D.Colo.1982) (adopting rule that purchase money character to be determined from all surrounding circumstances); *In re Conn,* 16 B.R. 454 (Bankr.W.D.Ky.1982) (purchase money character survives refinancing); *In re Chambell,* 17 B.R. 597 (Bankr.W.D.Mo. 1982)." *Id.* at 800–801.

In this case the PCA presented evidence that they were only suing on the last note of the Debtors, which was a consolidation of the Debtors' three previous notes. As such, this note does not give rise to a purchase money security interest in light of the *Matthews* holding. As such the PCA's lien may be avoided by these Debtors.

IT IS ORDERED that the Debtors' motion to void the lien of the security interest of the Western Montana Production Credit Association in the D–7F Cat Tractor is granted and the lien is voided under Section 522(f)(2)(B) of the Bankruptcy Code.