**In re Russell Alvin ROSEN, Debtor.**

**Russell Alvin ROSEN, Plaintiff,**

**v.**

**ASSOCIATES FINANCIAL SERVICES COMPANY, Defendant.**

Bankruptcy No. 81–00476.
Complaint No. 81–0227.

United States Bankruptcy Court,
D. South Carolina.

Sept. 16, 1981.

Charles S. Bernstein, Charleston, S. C., for plaintiff.

Thomas H. Brush, Charleston, S. C., for defendant.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

The debtor seeks under 11 U.S.C. § 522(f)(2) to set aside a lien on household appliances held by Associates Financial Services Company (Associates).

## FACTS

The facts are not in dispute. The debtor purchased household appliances, as defined in § 522(f)(2) of the Bankruptcy Code (11 U.S.C. § 522(f)(2)), for the sum of $2,819.45. Associates financed the purchase by issuing its check to the vendor and receiving, in return, a security interest in the appliances. The debtor's contract obligated him to repay the sum of $2,500 advanced by Associates as a portion of the purchase price of $2,819.45 (the debtor's down payment was $319.45), and for interest thereon. Both parties agree that Associates obtained a valid purchase-money security interest in the appliances at that time.

Twenty-eight days after the above loan was made, a second loan, which was secured by the same appliances and used to pay the first loan, was made by Associates to the debtor. The second set of documents evinces:

1. A new loan number,

2. A new security listing,

3. A check issued to the debtor in the amount of $18.41,

4. A "balance to Associates on [the old] account" in the amount of $2,540.61,

5. An advance for credit life insurance in the amount of $122.04,

6. An advance for accident and health insurance in the amount of $154.58,

7. An advance for Fire-HHG insurance in the amount of $183.06,

8. An advance for filing fees in the amount of $4.00,

9. An advance for documentary tax stamps in the amount of $1.24.

The total amount advanced was $3,023.94.

The second security agreement does acknowledge additional advances;[1] however, the same collateral secures the additional debt as well as the original purchase debt. The rights of the debtor in the collateral were acquired by him at the time of the original transaction; neither the later cash advances nor the renewal note gave the debtor additional rights in the collateral.

Two separate loans were made; the second paid the first. Additional advances, over and above the actual purchase price of the appliances, were made at the time of the second loan when the second security instrument for the new transaction was executed. See, *Matter of Jones*, 5 B.R. 655 (Bkrtcy.M.D.N.C.1980).

The debtor's position is that the second loan—with the accompanying financing statement—gave Associates a *non* purchase-money security interest which the debtor may avoid under § 522(f)(2) of the Bankruptcy Code (11 U.S.C. § 522(f)(2)).[2] Associates opposes, contending that because the second loan was made at the request of the debtor to enable him to meet his payments on the original loan, the newer lien is a purchase-money security interest which is not avoidable under § 522(f)(2).

## QUESTION

When Associates advanced additional sums and refinanced the original note, was the purchase money character of the original lien on household appliances destroyed, thereby rendering the security interest held under the renewal note a *non* purchase-money security interest which is avoidable under 11 U.S.C. § 522(f)(2)?

1. See items enumerated 5, 6, 7, 8 and 9 above.

2. 11 U.S.C. § 522(f): "Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—* * * (2) a nonpossessory, nonpurchase-money security interest in any— (A) household furnishings, household goods,

A review of the second loan documents reveals that the proceeds of this new loan were used to refinance the old loan and to make premium payments of $459.68 on a barrage of insurance contracts—credit life, fire, accident and health. The additional requirement of such insurance, when the balance due on the old account (without the new insurance contracts) was only $2,540.61, raises the inference that the secured creditor has obtained thereby certain benefits from the new transaction thus negating Associates' contention that this loan was merely to assist the debtor in making payments under the original transaction. Because the second transaction goes beyond merely assisting the debtor in making payments under the original transaction, there is no justification for holding that the purchase-money security interest of the original transaction continues.

The Bankruptcy Code does not define a purchase-money security instrument, or a nonpurchase-money security instrument. However, the Uniform Commercial Code (as adopted in South Carolina) says that "a security interest is a 'purchase money security interest' to the extent that it is * * * (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." Section 36–9–107(b), Code of Laws of South Carolina (1976). Official Comment 2 to this section indicates that, "when a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration." This language implies the exclusion from the purchase-money category any security interest taken as security for or in satisfac-

wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or (C) professionally prescribed health aids for the debtor or a dependent of the debtor."

tion of a pre-existing claim or antecedent debt.

The major portion of the funds generated by the second note have been used in total satisfaction of the antecedent debt. The renewal note was executed for the purpose of paying the original note—an antecedent debt. *See, Matter of Jones, supra.* When the proceeds from the renewal note were used to satisfy the original note, the purchase-money character of the security interest was extinguished with the result that it became a nonpurchase-money security instrument.

### ORDER

It is, therefore, concluded that the security instrument is a nonpurchase-money security instrument and should be avoided.

AND IT IS SO ORDERED.