**In re Edward Leigh PENNY and Jean Coleman Penny, Debtors.**

**BUTTERWORTH FURNITURE COMPANY, Plaintiff,**

**v.**

**Edward Leigh PENNY, Jean Coleman Penny, Defendants.**

**Bankruptcy No. 81–00724–R.**

**Adv. No. 81–0147–R.**

United States Bankruptcy Court, E. D. Virginia, Richmond Division.

Oct. 27, 1981.

John C. Somers, Richmond, Va., for plaintiff.

H. Curtis Butterworth, Eliades & Butterworth, Hopewell, Va., for defendants.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of a Complaint by Butterworth Furniture Company, by counsel, for recovery of personal property and for relief from automatic stay. Upon the filing of an Answer by the Defendants a trial was held and briefs were

submitted. Upon the foregoing the Court makes the following determination.

## STATEMENT OF FACTS

Between 1973 and 1978 Butterworth Furniture Company (Butterworth) sold a number of appliances and pieces of furniture to Edward Leigh Penny and Jean Coleman Penny (Pennys). The Pennys purchased the items on six separate occasions during the six-year period. The parties entered into separate purchase money security agreements each time a purchase was made. Each of the six purchase money security agreements had a term of thirty-five months. In each agreement the Pennys granted Butterworth a security interest in the furniture purchased. Each new purchase money security agreement also incorporated any remaining balance from the previous purchase money security agreements. By use of this contract Butterworth was able to secure the payment of the Pennys' most recent purchases with furniture the Pennys purchased on previous dates. As a result Butterworth maintained a security interest in all the goods purchased under the installment contract until all the goods were paid for in full.[1]

The Pennys made no voluntary payment after October, 1980. Butterworth received no payment after April, 1981, at which time it obtained a payment through a writ of garnishment. The property secured by the six purchase money security agreements is valued at $1,500.00. The Pennys owe Butterworth $2,714.01. The Pennys filed a joint voluntary petition for relief under Chapter 7 of the U. S. Bankruptcy Code on April 29, 1981. The Trustee abandoned this property on June 15, 1981.

## MEMORANDUM OF LAW

A party in interest may seek relief from the automatic stay provisions of the Bankruptcy Code pursuant to 11 U.S.C. § 362(d) and a Court may grant the relief requested for cause after notice and hearing. Butterworth alleged that its security acquired by the purchase money security agreements it entered into with the Pennys was inadequately protected. Butterworth entered into six purchase money security agreements with the Pennys between 1973 and 1978.

The six agreements covered sales of more than fifty furniture and appliance items. These items were consumer goods under *Virginia Code* § 8.9–109(1)[2] and the security interest therein was obtained through *Virginia Code* § 8.9–302(1)(d) (Cum.Supp. 1981). Butterworth argued that the Pennys had no equity in the property because the property was appraised to be worth $1,500.00 and the outstanding balance on the debt as of April, 1981 was $2,714.01.

The Pennys assert that Butterworth's lien on the aforesaid items is void because of non-compliance with *Virginia Code* § 8.9–204.1 (Cum.Supp.1981).[3] This

---

1. The agreement between the Pennys and Butterworth contained the following language: "It is agreed that the contracts, whether one or more, heretofore entered into between Seller and Buyer having an unpaid balance of $ (referred to as the "prior balance"), shall remain in full force and effect, that Seller's security interest in the goods sold thereunder shall remain perfected, and that the contract evidenced by this instrument shall have no effect on the above-mentioned existing contracts except to modify the terms of payment thereof. It is further agreed, however, that for the purposes of the payment of the said old balance and the time price on the contract evidenced by this instrument, Buyer shall make one payment in the amount and for the periods set forth below until the total of payments as set forth has been paid. Upon a default in the contract evidenced by this instrument, the said existing contract shall also be deemed to be in default."

2. "Goods are 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes." *Va.Code Ann.*, § 8.9–109(1), (Vol.1965).

3. "Security interests in consumer goods.—(a) Notwithstanding any other provision of the law to the contrary, a seller may take a security interest only in the goods sold; provided, however, this section shall apply only to the sale of consumer goods as defined in § 8.9–109(1). Where the unpaid debts from two or more sales of consumer goods are consolidated into one debt payable on a single schedule of payments, and the consolidated debt is secured by securi-

section provides that a seller may take a security interest only in the goods sold. *Virginia Code* § 8.9–204.1(a) (Cum.Supp. 1981). Unpaid debts may be consolidated into one debt payable on a single schedule of payments still secured by collateral purchased under an earlier agreement. *Id.* If the parties choose this route, the payments made by the Debtor under the consolidated schedule must be applied either "(1) in the order in which the sales were made, starting with the first sale, or (2) in the same proportion as the original debts arising from the various sales bear to one another." [4] *Id.*

The agreement between Butterworth and the Pennys does not provide for the payments to be applied in either manner prescribed by *Virginia Code* § 8.9–204.1 (Cum. Supp.1981). The agreement provides that seller's security interest in the goods sold under each contract remain perfected until the debtor has completely paid the entire debt under the consolidated schedule. Butterworth attempted to use this contractual language to maintain a security interest in all of the goods the Debtors bought under the six installment contracts until all of the goods were paid for in full. Under certain circumstances, use of a consolidated debt schedule may create an unconscionable con-

tract. *Williams v. Walker-Thomas Furniture Company,* 350 F.2d 445 (D.C.Cir.1965). *See also, In re Coronado,* 7 B.R. 53 (Bkrtcy. Ariz.1980). In these cases the security interest on every item purchased continued until the balance due on all items whenever purchased was liquidated.

Butterworth now seeks to satisfy the Pennys' payment deficiency by proceeding against all of the items the Pennys purchased over the five-year period. *Virginia Code* § 8.9–204.1 protects debtors from a seller's use of a purchase money security agreement in this manner. A security interest which violates this section is void. *Virginia Code* § 8.9–204.1(d) (Cum.Supp. 1981). Absent *Virginia Code* § 8.9–204.1, Butterworth would have a security interest in only the property purchased in the most recent transaction; however, noncompliance with that section voids the entire security interest in each of the six contracts. A seller must proceed under one of the two provisions of *Virginia Code* § 8.9–204.1(a) in consolidating a buyer's debts.

The requirements of *Virginia Code* § 8.9–204.1 do not apply to consolidation of debts for the purchase of consumer goods where the goods were purchased pursuant to an open-end credit plan. *Virginia Code* § 8.9–

---

ty interests in the consumer goods sold; the payments made by the debtor under the consolidated schedule may be applied to the payment of the debts arising from the sales either (1) in the order in which the sales were made, starting with the first sale, or (2) in the same proportion as the original debts arising from the various sales bear to one another. To the extent debts are paid according to this section, security interests in the consumer goods sold will terminate as the debt originally incurred with respect to each item is paid.

(b) This section shall not apply to a sale of consumer goods purchased to an open-end credit plan, when previously purchased consumer goods were purchased pursuant to such plan. This section shall not apply to security interest in a motor vehicle, trailer or semitrailer which may be the subject of a certificate of title under Title 46.1.

(c) A security interest created in violation of this section is void." *Va.Code Ann.,* § 8.9–204.1 (Cum.Supp.1981).

4. The following example illustrates this section's requirements. "A consumer purchases a stove for $200.00 and makes $25.00 monthly

payments on the secured stove. Six months later he purchases a $200.00 refrigerator from the same seller who consolidates the $250.00 debt, takes a security interest in both items, and requires that $25.00 monthly payments be made.

If finance charges are ignored for the sake of simplicity, a seller under prior law could retain a security interest in both goods for ten more months by allocating most of each monthly payment to the second purchase. Under the first procedure in Code section 8.9–204.1, the security interest in the stove would be extinguished in two months because the payments would be allocated in the order in which the sales were made. Under the second procedure in Code section 8.9–204.1, the payments would be allocated equally to each item because the proportion of the original debts to one another is one to one. Thus, under the second procedure, the security interest in the stove would be extinguished in four months." 60 Va.L.Rev. 1475, 1487 (1974).

204.1(b) (Cum.Supp.1981). Neither does the section apply to a security interest in a motor vehicle, trailer or semitrailer. *Virginia Code* § 8.9–204.1(b) (Cum.Supp.1981). However, the Pennys' agreement did not constitute an open-end credit plan. Open-end credit terms are initially established when the credit plan is created but no fixed amount of debt is incurred at that time. *Goldman v. First Nat. Bank of Chicago*, 532 F.2d 10, 17 n. 11 (7th Cir. 1976), *cert. denied* 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976). When a purchase is made it is added to any outstanding balance. *Id.*

 Except for purchase money security interests in consumer goods, a financing statement usually must be filed to perfect a secured interest. *Virginia Code* § 8.9–302(1)(d) (Cum.Supp.1981). A purchase money security interest may not cover a pre-existing claim or antecedent debt. *Virginia Code* § 8.9–107 (Vol.1965) (Official Comment). A purchase money security interest may cover only the price of that which is purchased in the transaction in which the security interest is created. *In re Manuel*, 507 F.2d 990, 993 (5th Cir. 1975). When items which were previously purchased and covered by an earlier purchase money security interest are consolidated into a new purchase money security interest and stand as security for the purchase price of items subsequently purchased, the instrument is no longer a purchase money security instrument, and it is removed from the "automatic perfection" provision of § 8.9–302(1)(d) of the *Virginia Code*. *See, In re Johnson*, 1 B.C.D. 1023, 1025 (Bkrtcy.S.D. Ala.1975). The seller may maintain a security interest in the previously purchased items only by filing a financing statement pursuant to § 8.9–302(1)(d) of the *Virginia Code*. Butterworth failed to file a financing statement after the debts were consolidated into a single contract.

Noncompliance with *Virginia Code* § 8.9–204.1 renders void all liens created by the contracts entered into by Butterworth and the Pennys.

An appropriate order will issue.