**In re John G. KELLEY, Sr., Debtor.**

**John G. KELLEY, Sr., Plaintiff,**

v.

**UNITED AMERICAN BANK IN KNOXVILLE, Defendant.**

**Bankruptcy No. 3–81–01377.**

**Adv. No. 3–81–1043.**

United States Bankruptcy Court, E. D. Tennessee.

Feb. 19, 1982.

Stone & Hinds, Steven D. Lipsey, Knoxville, Tenn., for plaintiff.

Ridenour, Ridenour, Ridenour, Bowers & Shumate, Floyd H. Bowers, Knoxville, Tenn., for defendant.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

I

This is an action by the debtor to avoid a nonpossessory, nonpurchase-money security interest in household goods. 11 U.S.C. § 522(f).[1]

---

1. "Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.  .  .  .  .

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; . . . ." 11 U.S.C. § 522(f)(2)(A).

## FINDINGS OF FACT

1. John G. Kelley, Sr., debtor and plaintiff in this action (Kelley), filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on September 2, 1981.

2. Kelley filed the present adversary proceeding on December 1, 1981, pursuant to U.S.C. § 522(f)(2) to avoid a nonpossessory, nonpurchase-money security interest in household and personal goods.

3. On March 29, 1978, Kelley entered into an agreement entitled "Installment Promissory Note, Security Agreement, and Disclosure Statement" with the United American Bank, Knoxville, Tennessee (UAB), whereby UAB loaned Kelley a gross amount of Six Thousand Two Hundred Thirteen Dollars and Sixty Cents ($6,213.60).

4. The March 29, 1978, loan was to be repaid in thirty-six (36) monthly installments beginning April 30, 1978, in the amount of One Hundred Seventy-two Dollars and Sixty Cents ($172.60) each. The March 1978 loan was given account number 010–95868–0 by UAB.

5. With the proceeds of the March 1978 loan, Kelley purchased a 1976 Mercury Cougar and granted a security interest in the vehicle to UAB.

6. UAB perfected its interest in the vehicle by noting its lien on the Certificate of Title.

7. On October 20, 1978, Kelley entered into an agreement entitled "Installment Promissory Note, Security Agreement and Disclosure Statement," whereby UAB loaned Kelley the gross amount of Four Thousand Nine Hundred Ninety-nine Dollars and Sixty-eight Cents ($4,999.68).

8. The October 1978 loan was given account number 030–01348–5 by UAB.

9. The October 1978 loan called for repayment in thirty-six (36) monthly installments beginning December 5, 1978, in the amount of One Hundred Thirty-eight Dollars and Eighty-eight Cents ($138.88) each.

10. With the proceeds of the October 1978 loan, Kelley purchased the following household goods and granted a security interest in the goods to UAB:

   a. One Thomasville bedroom suite (including pecan and brass bed and Armoire stand-up chest);

   b. One 6-piece Henredon Venture sectional couch;

   c. Three stainless steel shelves;

   d. One lamp; and

   e. Two Lane tables.

11. UAB filed a financing statement with the Knox County Register of Deeds and with the Secretary of State for the State of Tennessee.

12. On January 11, 1980, Kelley entered into an agreement entitled "Installment Promissory Note, Security Agreement and Disclosure Statement" with UAB in the gross amount of Ten Thousand Eight Hundred Four Dollars and Ninety-two Cents ($10,804.92).

13. The January 1980 loan was given account number 1153108662 by UAB.

14. The January 1980 loan was to be repaid in forty-two (42) monthly installments beginning February 20, 1980, in the amount of Two Hundred Fifty-seven Dollars and Twenty-six Cents ($257.26) each.

15. The proceeds of the January 1980 loan paid off the March 1978 loan, the October 1978 loan, and a Master Charge account which Kelley owed to UAB.

16. The March 1978 and the October 1978 loans were marked "paid in full."

17. UAB took as security for the January 1980 loan the 1976 Mercury Cougar and the previously mentioned household goods.

18. Kelley paid approximately One Thousand Nine Hundred Dollars ($1,900) on the January 1980 loan.

19. There is no formula in the January 1980 loan agreement for application of payments to the Mercury Cougar loan, the household goods loan, or the Master Charge debt.

Summarizing the above findings, Kelley in March 1978 obtained a loan from UAB to finance the purchase of an automobile. In

October 1978 he obtained a loan to finance the purchase of household goods. In January 1980 he was behind in his payments on the loans and was also indebted to the Bank for purchases on a Master Charge credit card. The balances on the two loans and the amount owing on the Master Charge account were consolidated into a new note and security agreement which included both the automobile and the household goods. A new payment schedule was set up, a new account number assigned, and a new rate of interest specified.

## II

There is no dispute but that initially UAB held a purchase money security interest in the household goods, T.C.A. 47–9–107(b), nonavoidable under 11 U.S.C. § 522(f)(2). The present question is whether UAB lost its purchase money security interest by consolidating the three accounts into a new account, note, and security agreement.[2]

"When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This Section therefore provides that the purchase money party must be one who gives value 'by making advances or incurring an obligation': The quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt." Comments to Official Text, T.C.A. § 47–9–107.

A number of recent bankruptcy decisions have held that lenders who consolidate prior or subsequent purchase money loans secured by household goods with other non-purchase-money loans lose their purchase money status to the challenge of 11 U.S.C. § 522(f)(2)(A). See In re Mulcahy, 3 B.R. 454 (Bkrtcy.S.D.Ind.1980); Matter of Jones, 5 B.R. 655 (Bkrtcy.M.D.N.C.1980); In re Coomer, 8 B.R. 351 (Bkrtcy.E.D.Tenn.1980); In re Slay, 8 B.R. 355 (Bkrtcy.E.D.Tenn. 1980); In re Alston, 11 B.R. 184 (Bkrtcy.W. D.Tenn.1981).

In re Manuel, 507 F.2d 990 (5th Cir. 1975), the issue was whether certain transactions should be recognized as purchase money security transactions. More than one sale was involved and the last security agreement included the unpaid balance from a prior purchase. The Court held there was no purchase money security interest in the goods formerly purchased:

"A plain reading of the statutory requirements would indicate that they require the purchase money security interest to be in the item purchased, and that, as the judges below noted, the purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created, if the vendor is to be protected. . . ." Manuel, supra, at 993.

In the case before this court, UAB initially held a purchase money security interest in the household goods in the amount of $4,999.68 (principal $4,100.00; finance charge $899.68). Under the terms of the January 11, 1980, security agreement, UAB obtained a security interest in the amount of $10,804.90 ($8,486.48 principal; $2,318.44 interest and other charges) in both the household goods and the automobile. Thus, UAB now asserts a security interest in the household goods that far exceeds its original purchase money security interest. The January 11, 1980, agreement provides no method of apportioning the loan between the original purchase money interest in the household goods, the loan on the automobile, and the Master Charge debt, all consolidated into one loan agreement.

The court concludes that by consolidating the loans and the debt and by failing to provide any method of apportioning the transaction or payments received pursuant thereto, UAB lost its purchase money security interest in the household goods. The debtor may, therefore, avoid the lien. 11 U.S.C. § 522(f)(2).

2. The parties agree that a 1981 amendment to T.C.A. 47–9–107 is not applicable in this controversy.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.