In re Donald Edward FICKEY, Kathy Lynn Bentley Fickey, Debtors.

Donald Edward FICKEY, Kathy Lynn Bentley Fickey, Plaintiffs,

v.

The BANK OF LaFAYETTE, Defendant.

Bankruptcy No. 1–81–01463.
Adv. No. 1–81–0493.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 23, 1982.

Robert J. Harriss, Rossville, Ga., for the plaintiffs.

Fred T. Hanzelik, Chattanooga, Tenn., for the defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The question in this proceeding is whether or not the defendant bank's security interest in certain household furnishings and appliances owned by the plaintiff debtors is a purchase money security interest. The debtors claimed the goods as exempt and brought this action to avoid the bank's security interest as impairing their exemptions. The security interest can be avoided only if it is a nonpurchase money security interest. 11 U.S.C. § 522(f)(2).

The relevant facts are as follows.

In November, 1979, Donald Edward Fickey, one of the debtors, bought the goods in question from Suburban Furniture of LaFayette, Georgia. He made a down payment and for the balance of the price executed a conditional sale contract providing for payment in installments and reserving a security interest in the goods to secure payment. The first installment payment was due in January, 1980. Altogether there were to be thirty-six installments.

The contract was assigned to the Bank of LaFayette, and the debtors made payments directly to it. The debtors had trouble making the payments and in November, 1980, were two installments behind. On November 28, they executed a second contract providing for refinancing by the bank. The new contract is on the same conditional sale contract form as the original contract and shows Suburban Furniture as the seller, but it is undisputed that the transaction involved only the debtors and the bank.

The bank asserts that this was essentially a straight refinancing of what was owed on the original contract at the time of the refinancing. The statement of account on the original contract and the new contract do not exactly agree with this assertion. They show that the debtor originally owed $4,708.67. This was reduced as follows:

| | |
|---|---|
| Original Debt | $4,708.67 |
| —Payments | 1,179.00 |
| —Interest Rebate | 537.36 |
| Subtotal | $2,992.31 |

The statement of account on the original loan shows that the above subtotal plus $25.00 in late charges was paid. This would make the total refinanced $3,017.31.

The new contract shows the purchase price as $136.87 more than this amount. The additional $136.87 apparently was not cash received by the debtors. Donald Fickey testified that they received no cash from the refinancing. The new contract also does not show that any insurance premiums or filing fees were added. It was written on the new contract that the insurance for the original note was still in force. The additional $136.87 is the sum of two amounts ($54.18 and $82.69) written in a blank area of the statement of account for the original loan, but there was no explanation of what those amounts were.

In other respects, the new contract slightly reduced the amount of the monthly installment payments and extended the payment period six months beyond the payment period on the original contract. The annual percentage rate of interest was the same. Kathy Fickey also signed the new contract. She was not a party to the original contract.

It appears that Donald Fickey was a resident of Georgia when he executed the first

contract, and he and Kathy Fickey were residents of Georgia when they executed the refinancing contract.

### Discussion

To the extent state law is relevant, Georgia law should apply in this proceeding. Tenn.Code Ann. §§ 47–1–105. See also *Ohio Casualty Insurance Co. v. Travelers Indemnity Co.,* 493 S.W.2d 465 (Tenn.1973); *Deaton v. Vise,* 186 Tenn. 364, 210 S.W.2d 665 (1948).

The Bankruptcy Code does not define "non-purchase money security interest" or "purchase money security interest". For the purpose of applying Bankruptcy Code § 522(f)(2), the courts have turned to the state law definition of "purchase money security interest" found in § 9–107 of the Uniform Commercial Code (UCC), the law in every state but one. This reliance on state law is appropriate since the creation of security interests in personal property is generally controlled by state law. Nevertheless, "nonpurchase money security interest" in the Bankruptcy Code can be interpreted in light of the policy underlying § 522(f)(2). *In re Matthews,* 20 B.R. 654, 9 B.C.D. 171 (Bkrtcy.App. 9th Cir. 1982); *In re Coomer,* 8 B.R. 351 (Bkrtcy.E.D.Tenn. 1980).

Georgia's version of § 9–107 of the UCC provides:

A security interest is a "purchase money security interest" to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price;

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Ga.Code Ann. § 109A–9–107.

Under this definition, whether a security interest is a purchase money security interest depends on what the collateral secures. A security interest in an item of collateral is "purchase money" to the extent the item secures a debt incurred to enable the debtor make the purchase. To the extent an item of collateral secures some other kind of debt, the security interest in the item is not purchase money. See *In re Manuel,* 507 F.2d 990, 16 UCC Rep.Serv. 493 (5th Cir. 1975); *In re Norrell,* 426 F.Supp. 435, 21 UCC Rep.Serv. 1185 (M.D.Ga.1977); *In re Staley,* 426 F.Supp. 437, 22 UCC Rep. Serv. 799 (M.D.Ga.1977); *In re Booker,* 9 B.R. 710, 31 UCC Rep.Serv. 285 (Bkrtcy.M. D.Ga.1981).

Sellers commonly combine a series of secured sales. If all the items purchased at the different times are made to secure the combined debt, then each item secures a debt not wholly attributable to its purchase. It has been held that the security interest is not a purchase money security interest. See *In re Manuel,* cited above; *In re Norrell,* cited above. See also *In re Kelley,* 17 B.R. 770, 8 B.C.D. 1010 (Bkrtcy.E.D.Tenn. 1982); *In re Jebbia,* 9 B.R. 542 (Bkrtcy.S.D. Ala.1980); *In re Krulik,* 6 B.R. 443 (Bkrtcy. M.D.Tenn.1980); *In re Scott,* 5 B.R. 37, 6 B.C.D. 407, 2 C.B.C.2d 1012 (Bkrtcy.M.D.Pa. 1980).

A contract combining purchase money debts can be drafted so that each item secures only the debt for its purchase. In that situation, the security interest in each item is clearly a purchase money security interest. *In re Staley,* cited above.

Some courts have also held that if the contract provides a method for dividing the secured debt and applying the payments to determine the extent to which an item secures its purchase money debt, then the security interest in the item is purchase money to that extent. Cf. *In re Kelley,* cited above; *In re Coomer,* cited above.

The courts do not agree on this rule or on whether a contractual formula is necessary or the division can be made according to statute or common laws rule. See *In re Norrell,* cited above; *In re Booker,* cited above; *In re Conn,* 16 B.R. 454 (Bkrtcy.W. D.Ky.1982).

A similar problem arises when an earlier nonpurchase money debt is combined with a

later purchase money debt, and both are secured by the goods purchased. *In re Coomer,* cited above.

This case, however, is more like the cases in which an earlier purchase money debt is combined with a later nonpurchase money debt. *In re Matthews,* cited above; *In re Conn,* cited above; *In re Slay,* 8 B.R. 355 (Bkrtcy.E.D.Tenn.1980). In such cases, another question arises. The question is whether any of the new debt is a purchase money debt, especially if the lender "pays" the purchase money debt and has the debtor execute a new note and a new security agreement creating a security interest in the purchase money collateral to secure the combined debt.

Arguably, none of the "new" loan was used to enable the debtor to buy the collateral; it was used to pay an antecedent debt. UCC § 9–407, Official Comment 2. Thus, it is argued that the purchase money debt does not survive, and the security interest cannot be purchase money. See *In re Johnson,* 15 B.R. 681 (Bkrtcy.W.D.Mo.1981); *In re Alston,* 11 B.R. 184 (Bkrtcy.W.D.Tenn. 1981); *In re Rosen,* 18 B.R. 723, 8 B.C.D. 1284 (Bkrtcy.D.S.C.1981).

In this case, the "new" loan was not a combination of a purchase money debt and a later nonpurchase money debt. The debtors did not receive any new money. The unexplained $136.87 apparently was for charges incident to the refinancing or was due under the original note but was not "paid" when the account was closed. The transaction in question was simply a renewal or refinancing of the purchase money loan.

[redacted] Some courts have held that a refinancing does not necessarily destroy the character of the debt as a purchase money debt. *In re Matthews,* cited above; *In re Conn,* cited above; *In re Gibson,* 16 B.R. 257 (Bkrtcy.D.Kan.1981); *In re Holland,* 16 B.R. 83 (Bkrtcy.N.D.Ohio 1981). The basis of the decisions generally is that the execution of new documents evidencing a debt does not extinguish the debt or change its character, unless that was the intention of the parties. This rule can be said to follow from the rule that execution of a promissory note is not payment of the underlying debt until the note is paid, unless the parties clearly intended that the note extinguish the debt.

In *In re Slay,* cited above, this court generally agreed with a decision holding that refinancing does make a purchase money security interest a nonpurchase money security interest. *In re Jones,* 5 B.R. 655, 6 B.C.D. 848 (Bkrtcy.M.D.N.C.1980). The *Slay* case involved interpretation of the Tennessee UCC. In this case the court should look to decisions applying the Georgia UCC.

None of the decisions under UCC § 9–107 or Bankruptcy Code § 522(f)(2) involves essentially the same facts as this case.

[redacted] The Georgia courts have followed the rule that execution of a new note to replace an old note does not necessarily extinguish the debt underlying the old note.[1] But the court has not found any Georgia decision applying the rule with regard to the effect of refinancing on the character of a purchase money security interest as defined by the UCC. *Blackshear Mfg. Co. v. Harrell,* 191 Ga. 433, 12 S.E.2d 328 (1940); *Carlton Supply Co. v. Battle,* 142 Ga. 605, 606, 83 S.E. 225 (1916); *Farmers & Merchants Bank v. Rogers,* 55 Ga. App. 38, 189 S.E. 274 (1936); *Georgia National Bank v. Fry,* 32 Ga.App. 695, 124 S.E. 542 (1924).

[redacted] The courts that have interpreted § 9–107 of the Georgia UCC have steadfastly refused to give purchase money status to a security interest when the collateral secures more than its purchase price and charges incurred as part of the sale or purchase money loan. See *In re Norrell,* cited above; *In re Staley,* cited above; *In re Booker,* cited above.

[redacted] The secured debt in this case includes not only the original purchase money

1. Since a new party, Kathy Fickey, became obligated on the second note, it can be argued that the parties intended to extinguish the original debt, and the rule would not help the bank.

debt but also charges for the extension or refinancing. It can be argued that such charges are part of the purchase money debt since they were incurred only for the purpose of extending the time for payment. But the additional charges obviously were not incurred to allow the debtors to acquire the collateral. Applying the definition strictly, the court cannot find that the added charges are purchase money debt.

■ The court believes the problem caused by refinancing generally can be treated like the problems caused by combining purchase money and nonpurchase money transactions. The fact that refinancing is carried out in the form of a new loan that pays the purchase money debt does not mean there is a "new" debt that is completely nonpurchase money. It does mean that to the extent the "new" debt includes charges for the refinancing, it is a nonpurchase money debt. The problem, then, is how to determine the extent to which the debt is a purchase money debt.

In this case the court would be required to divide the total debt into purchase money and nonpurchase money parts and to apply the payments by some method which would allow a determination of the remainder due on the purchase money part of the debt. The task might be easily done according to a statute or court-established rule.

The courts applying the Georgia UCC, however, have generally abided strictly by the UCC definition of purchase money security interest, thereby eliminating any security interest that *the contract itself* does not limit to security for the purchase money debt. The courts have otherwise declined to undertake the task of finding the extent to which a secured debt is a purchase money debt. Until the courts in Georgia decide or indicate that in this situation they will find the debt to be partly a purchase money debt and the security interest to be purchase money to that extent, this court will not establish such a rule for Georgia debtors who happen to file their bankruptcy petitions here.

Accordingly, the court holds that the bank's security interest is nonpurchase money. It is undisputed that the debtors have exemptions available to the full value of the property and thus the bank's security interest is fully avoidable.[2]

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.

---

2. Obviously the security interest is nonpurchase money as to Kathy Fickey, since she was not a purchaser. It is, however, undisputed that she has an exemptable interest in the goods.