In re Joseph John MOORE, Marla Mae Moore dba Age of Plastics, Inc., Debtor(s).

Bankruptcy No. 383–01826.

United States Bankruptcy Court, D. Oregon.

Sept. 15, 1983.

No appearance for debtors.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

On July 14, 1983, the court held a hearing upon confirmation of the debtors' chapter 13 plan. Associates Financial Services (Associates) appeared by its assistant branch manager, Linda Hushbeck. The debtors failed to appear personally or by their attorney, Magar E. Magar.

The plan is dated July 7, 1983 and treats Associates as a secured creditor with collateral consisting of a 1976 Pontiac of the value of $600 with monthly payments at $20 including interest at 1% per month. The amount of the debt is shown as $4,096. The plan provides for payments to the trustee of $512 per month for 36 months with the unsecured creditors to receive approximately 13%. In paragraph 8 of the plan the debtors seek to void the lien of Associates upon household goods under 11 U.S.C. § 522(f).

It was represented to the court that the debtors had purchased a big screen television set upon a retail installment contract which reserved to the seller a purchase money security interest. This contract was then assigned by the seller to Associates. Some time later the debtor sought a loan from Associates. Approximately $900 was advanced and Associates retained a security interest in the TV and took a security interest in the 1976 Pontiac automobile as additional security.

Associates contends that its security interest in the TV is a purchase money security interest and therefore is not voidable under § 522(f).

The cases are divided as to whether a purchase money security interest loses its character when additional funds are advanced and a security interest is taken not only for the purchase money but the additional funds as well.

For examples of cases holding that the balance due upon the purchase money security interest at the time of the later loan loses its character as such and that therefore no part of the balance due qualifies as a purchase money security interest see: *In re Rosen,* 18 B.R. 723, 8 BCD 1284, 1285 (Bkrtcy.D.S.C.1982); *In re Jones,* 5 B.R. 655, 6 B.C.D. 848 (Bkrtcy.M.D.N.C.1980); *In re Mulcahy,* 3 B.R. 454, 6 B.C.D. 223 (Bkrtcy.S.D.Ind.1980).

For cases holding that the purchase money security interest retains its character as such even when combined with a loan of additional funds see: *In re Matthews,* 20 B.R. 654, 9 B.C.D. 171 (Bkrtcy.App. 9th Cir.1982); *In re Sprague,* 29 B.R. 711 (Bkrtcy.M.D.Pa.1983); *In re Russell,* 29 B.R. 270 (Bkrtcy.W.D.Okl.1983).

The latter cases represent the better view. One of the primary purposes of the Bankruptcy Code is to provide the debtor with a fresh start. This is provided by a discharge and by permitting the debtor to retain certain basic essentials defined as exemptions under § 522. These exemptions may be claimed under subsection (d) or under state law if the state has "opted out", as has Oregon. Whether the exemptions are claimed under federal or state law it is the debtor's interest in the property which is made exempt. Thus liens against the exempt property survive the discharge. The sole exception to the survivability of liens is provided in subsection (f). Under this subsection the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) if such lien is—

"(1) a judicial lien; or

"(2) a nonpossessory, nonpurchase-money security interest in any—

"(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor."

■ Thus, under subsection (f)(1) the debtor may avoid judicial liens, which are non-consensual liens and can, under subsection (f)(2) avoid certain consensual liens. However subsection (f)(2) is clearly limited to liens which are nonpossessory, i.e. where the property is in the possession of the debtor; liens which are nonpurchase-money security interests, i.e. liens which do not represent the balance due upon the purchase of the property; and to liens on only certain limited types of property.

The effect of § 522(f) is that the debtor may retain exempt property free of non-consensual liens; that the debtor may not retain exempt property free of consensual liens which arose by virtue of the purchase of the property; but that the debtor may retain certain essential types of exempt property free of consensual liens which arose after the property was purchased and were granted for a purpose other than to purchase the property.

The rationale is plain. Congress determined, as a matter of social policy, that a debtor should be permitted to retain otherwise exempt property free of non-consensual liens and should be permitted to retain certain types of otherwise exempt property free from consensual liens so long as such liens did not represent the unpaid purchase price for such property. Obviously such a policy will discourage a lender from relying upon these types of property as collateral for a loan and may make a loan more difficult for a borrower to obtain. But § 522(f) represents a conscious choice made by Congress.

On the other hand, it is clear that Congress did not intend a debtor to avoid a lien which he granted in order to purchase the property in the first instance.

As a matter of equity, it is not necessary to deprive Associates of its purchase money security interest in the TV merely because additional funds were later loaned to the debtor and the balance due on the purchase money security interest was combined with the additional funds into a single obligation secured by the same property. The result should not change merely because additional security, the automobile, was also taken.

On the other hand, by loaning additional funds, Associates should not be permitted to apply payments which the debtor would have made upon the purchase money security interest to repayment of the cash advanced at the time of the later loan. Therefore, Associates should be required to apply to the purchase money security interest from each payment made by the debtor after the cash advance, an amount equal to the installments required by the agreement giving rise to the purchase money security interest. The balance of such payments, if any, should then be applied to that portion of the total obligation which does not represent a purchase money security interest. That portion of the total debt which does not represent the purchase money security interest in the TV may be voided under § 522(f).

The effect of this holding is that if the creditor wishes to retain the character of a purchase money security interest, it cannot vary the terms of the agreement which gave rise to the purchase money security interest and must from all payments made by the debtor first apply a sum at least equal to the amount required by the purchase money security agreement to that portion of the debt. To permit the creditor to first apply payments by the debtor to repayment of the non-purchase money obligation would be to allow the debtor to encumber exempt household property in contravention of the purpose of § 522(f).

At the hearing upon confirmation the court was not furnished with a copy of the retail installment contract for the TV, the balance due upon it at the time of the later security agreement, a copy of the later security agreement, a schedule of payments made by the debtor since the time of the later security agreement, nor a statement of the total amount due at the time of the filing of the chapter 13 petition. As a result, it is not possible for the court to determine what portion of the total obligation, if any, may be voided under § 522(f). Under these circumstances the court will schedule an adjourned confirmation hearing at which time the parties may submit appropriate evidence.