In re James E. FREEMAN, Debtor.

**SNAP–ON TOOLS CORPORATION, Appellant,**

v.

**James E. FREEMAN, Appellee.**

**Bankruptcy No. BK 89–04289. Civ. A. No. CV–90–A–02795–S.**

United States District Court, N.D. Alabama, S.D.

March 4, 1991.

Ruth Simmons Capra, Birmingham, Ala., for appellant.

Cindee Dale Holmes, Morris & Vann, Birmingham, Ala., for debtor/appellee.

## MEMORANDUM OPINION

ALLGOOD, Senior District Judge.

This is an appeal from the United States Bankruptcy Court, Northern District of Alabama, Southern Division. The issues on appeal are whether a purchase-money security interest was transformed into a nonpurchase-money security interest by consolidation with a new purchase, and whether the creditor's security agreement language is sufficient to preserve purchase-money security interest status.

■ A Bankruptcy Court's findings of fact are due to be affirmed unless clearly erroneous. *In re Sublett,* 895 F.2d 1381 (11th Cir.1990). Issues of law are to be reviewed *de novo. In re Hartley,* 75 B.R. 394 (S.D.Ala.1987); *Citicorp, Inc. v. Davidson Lumber Co.,* 718 F.2d 1030, 1032 (11th Cir.1983). This court has reviewed the record and considered the arguments of the parties. This court is of the opinion that the Bankruptcy Court's decision to grant the Debtor's motion to avoid nonpossessory, nonpurchase-money security interest is free from error and supported by the substantial weight of the evidence.

■ The appellant has raised on appeal several issues which are not included in the Designation of the Record on Appeal. This court declines to consider these issues in its decision. Bankruptcy Rule 8006. Of course, the Bankruptcy Court is free to consider these additional issues if it so desires.

Therefore, the court AFFIRMS the decision of the Bankruptcy Court and adopts its opinion in its entirety, a copy of which is attached as an appendage.

An order in conformity with this memorandum opinion will be entered.

## APPENDIX

United States Bankruptcy Court

For the Northern District of Alabama

Southern Division

In the Matter of: James E. Freeman, Debtor.

Case No. 89–04289.

Oct. 9, 1990.

### OPINION

The issue in this case is whether a creditor's claimed security is a nonpurchase-money security interest which a debtor can avoid under Section 522(f)(2)(B) of the Bankruptcy Code, 11 U.S.C. § 522(f)(2)(B). The Creditor, Snap–On Tools, moves to be relieved from the automatic stay so that it can recover its claimed security from the Debtor who has moved to avoid what he argues is Snap–On's nonpurchase-money security interest.

James E. Freeman (Debtor) is an automobile mechanic who purchased tools from Bobby Majors, a dealer for Snap-on Tools Corporation (Creditor) since before June 27, 1987. Mr. Freeman made all purchases on a regular basis, and his charges were posted to a "revolving account" without interest. All payments were made to Mr. Majors.

On February 1, 1988, Mr. Freeman purchased a number of tools at a price of $1,261.40. Because he already had a significant balance on his revolving account, Mr. Freeman agreed to consolidate his new purchase with the outstanding balance of his revolving account and entered into a security agreement with Mr. Majors. A cash down payment of $412.06 was made leaving $1,643.00 as principal to be financed. The agreement provided for a "purchase money security interest," and listed as "property" not only the $1,261.40 in new purchases but also $826.07 in tools transferred from the revolving account. Thus, the agreement attached $2,087.47 in tools to secure an obligation of $1,643.00. Mr. Majors assigned his interest to Snap–On Tools Corporation who transformed the agreement into an "Extended Credit Account." The account became interest bearing and required payments of $85.60 for 24 months.

Snap–On's agreement with Mr. Freeman provided for a "First In First Out" method of payment allocation to the Time Balance. Furthermore, it provides,

> When the prior purchase money Time Balance has been paid, the Secured Party retains a nonpurchase money security interest in the property described in prior agreements as security for the net balance due and the performance of any other obligations hereunder.

This is the only language in the agreement which makes reference to the release of the "purchase money" security status as Mr. Freeman makes payments on the account.

Mr. Freeman continued to purchase tools on credit from Mr. Majors after the establishment of the Extended Credit Account, and the charges were posted to the revolving account. On July 11, 1988, Mr. Freeman made another significant purchase, and as before, a consolidation was made. This time the outstanding balance of the Extended Credit Account was consolidated with the balance of the new revolving account and the value of the new purchase. This consolidated security agreement provided for a "purchase money security inter-est" in the same manner as before. After this consolidation, Mr. Freeman still continued to purchase tools on credit, and the entire process was repeated four months later on November 1, 1988. This third and final consolidation was perfected by the filing of a finance statement (U.C.C.–1). It is undisputed that the security agreement was perfected before Mr. Freeman voluntarily petitioned for bankruptcy.

Bankruptcy Code § 522(f)(2)(B) allows the debtor to avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) if such lien is a nonpossessory, nonpurchase-money security interest in any implement, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor. It is evident that Snap–On Tools does not have possession, and that its interest is "nonpossessory." Accordingly, the disposition of this case depends upon whether it is secured with a "nonpurchase money security interest" in the collateral.

The Bankruptcy Code does not define "purchase money security interest," and the court looks to state law for guidance. Alabama has adopted Section 9–107 of the Uniform Commercial Code which provides:

> A security interest is a "purchase money security interest" to the extent that it is
> (a) taken or retained by the seller of the collateral to secure all or part of its price; or
> (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Ala.Code § 7–9–107 (1975).

"A security interest in an item of collateral is 'purchase money' to the extent the item secures a debt incurred to enable the debtor to make the purchase. To the extent an item of collateral secures some other kind of debt, the security interest in an item is not purchase money." *In re Fickey*, 23 B.R. 586, 588 (Bkrtcy.E.D.Tenn.1982).

The courts have split in determining how to apply U.C.C. § 9–107 to situations in-

volving Section 522(f) of the Bankruptcy Code. Those that follow what has become known as the "transformation rule" hold that a "purchase money security interest" used to secure the purchase price of goods sold in a particular transaction is "transformed" into a nonpurchase money security interest when antecedent or after-acquired debt is consolidated with the new purchase under one contract. *Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d 797, 800 (3d Cir.1984); *SouthTrust Bank v. Borg–Warner Acceptance*, 760 F.2d 1240 (11th Cir.1985), *reh. denied en banc*, 774 F.2d 1179 (11th Cir.1985). *See, also, National Bank of Commerce v. Auto Parts, Inc.*, CV 89–6993 MC, Tenth Judicial Circuit Court of Alabama, unpublished order 3/13/90.

Other jurisdictions that follow the other or so-called "dual purpose" rule, criticize the "transformation rule" as being too restrictive. The courts point out that the underlying purpose of the "purchase money security interest" is to facilitate the flow of business with financing; therefore, they hold that "a purchase money security interest is a purchase money security interest 'to the extent' that it is taken or retained by the seller of the collateral to secure all or part of its purchase price. Thus, a purchase money security interest in a quantity of goods can remain such 'to the extent' it secures the price of that item, even though it may also secure the payment of other articles." *Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d at 800–801. With the collateral having a "dual purpose," the courts look to an allocation method provided either by contract or state statute to aid in sifting through the transactions in order to determine which items are still secured as a "purchase money security interest." *Id.* at 801.[1]

The manner in which Snap–On Tools consolidated Mr. Freeman's debts is a practice which is fairly common. Many sellers often combine their customers' secured debts. The issue at hand is whether the "purchase money security interest" survives such a consolidation for the purpose of applying Section 522(f)(2)(B) of the Bankruptcy Code. In the case of *In re Manuel*, 507 F.2d 990 (5th Cir.1975), a seller sold a customer various articles of furniture on account, and the consumer began making payments. About two months later the consumer bought a television set. The seller consolidated the debts from both transactions by incorporating the outstanding balance of the first purchase with the purchase of the television set. The contract provided the seller with a "purchase money security interest" in all of the goods purchased in both transactions. After the consumer filed a voluntary petition for bankruptcy, the seller argued that it was entitled to repossess the goods because of its "purchase-money" status in the collateral. The court disagreed and held "a purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the interest is created." *Id.* at 993. The *Manuel* holding involved a consumer transaction; however, it was reaffirmed and extended to include all transactions in *SouthTrust Bank v. Borg–Warner Acceptance*, 760 F.2d at 1242.[2]

---

**1.** *See also In re Johnson*, 101 B.R. 280 (Bkrtcy. W.D.Okla.1989); *In re Hemingson*, 84 B.R. 604 (Bkrtcy.D.Minn.1988); *In re Schwartz*, 52 B.R. 314 (Bkrtcy.E.D.Penn.1985); *In re Russell*, 29 B.R. 270 (Bkrtcy.W.D.Okla.1983); *In re Wilson*, 25 B.R. 276, 34 U.C.C.Rep.Ser. 1679 (Bkrtcy.D. Neb.1982); *In re Gibson*, 16 B.R. 257 (Bkrtcy.D. Kan.1981).

**2.** For other supporting authorities, *see In re Matthews*, 724 F.2d 798 (9th Cir.1984); *In re McCall*, 62 B.R. 57 (Bkrtcy.M.D.Ala.1985); *Rosen v. Associates Financial Services*, 17 B.R. 436 (Bkrtcy.D.S.C.1982); *Matter of Ward*, 14 B.R.

549 (Bkrtcy.S.D.Ga.1981); *In re Norrell*, 426 F.Supp. 435 (M.D.Ga.1977); *In re Brouse*, 6 U.C. C.Rep.Ser. 471 (W.D.Mich.1969); *In re Simpson*, 4 U.C.C.Rep.Ser. 243 (W.D.Mich.1966); *In re Gillie*, 96 B.R. 689 (Bkrtcy.N.D.Tex.1989); *Matter of Hipps*, 89 B.R. 264 (Bkrtcy.N.D.Ga.1988); *In re Snipes*, 86 B.R. 1006 (Bkrtcy.W.D.Mo.1988); *In re Smiley*, 84 B.R. 6 (Bkrtcy.D.R.I.1988); *In re Harrell*, 72 B.R. 107 (Bkrtcy.N.D.Ala.1987); *In re Challinor*, 79 B.R. 19 (Bkrtcy.D.Mont.1987); *Matter of Franklin*, 75 B.R. 268 (Bkrtcy.M.D.Ga. 1986); *In re Janz*, 67 B.R. 553 (Bkrtcy.D.N.D. 1986); *Matter of Richardson*, 47 B.R. 113 (Bkrtcy.W.D.Wis.1985); *In re Mason*, 46 B.R.

*Manuel* implicitly recognizes that without some method to allocate payments to secured items, purchase-money status cannot be determined. Both *Manuel*, 507 F.2d at 993, and *SouthTrust*, 760 F.2d at 1243, suggest that the "purchase money security interest" contained in a series of consolidated transactions might be preserved if an adequate allocation method were provided either by the contract or a statute.[3] The Eleventh Circuit stated in *SouthTrust:*

> We agree with the court in *In re Coomer*, 8 B.R. 351, 355 (Bankr.E.D.Tenn. 1980), that
>
> > Without some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money.
>
> Unless a lender contractually provides some method of determining the extent to which each item of collateral secures its purchase money, it effectively gives up its purchase money status.

*Id.* at 1243.

The Snap-On Tools security agreement provides for a "First In First Out" method of payment allocation to the Time Balance. The issue is whether this language is sufficient to aid the court in determining which items, purchased in numerous transactions over a seventeen month period, are secured by a "purchase money security interest." A similar question was presented in *Matter of McCombs*, No. 89-03650 (Bkrtcy.N.D.Ala. June 13, 1990), *aff'd*, No. 89-A-1012-S (N.D.Ala. Sept. 14, 1989) (both unpublished). In that case, the bankruptcy court held that the allocation method provided by the contract was inadequate, and the district court affirmed the holding on appeal.[4] Concerning the question of adequacy, the district court stated as follows:

> Companies should use Revolving Credit Account Agreements which contain precise language that is clear and understandable by the average person. One page contracts which contain very legible print are preferred. In reviewing several Revolving Credit Account Agreements, this court has found that such language as "payments will be applied first to Finance Charges, then to insurance premiums due, then to principal, in order of purchases" and "if more than one item is charged on the same day, the payment will be applied to the lowest priced item first" is necessary in order to indicate the extent of the creditor's purchase-money security interest in the goods. Companies should also include a clause in their Revolving Credit Account Agreement which states that if the debtor fails to make the payments as agreed

119 (Bkrtcy.E.D.Mich.1985); *In re Yokley*, 42 B.R. 574 (Bkrtcy.N.D.Ala.1984); *In re Schneider*, 37 B.R. 747 (Bkrtcy.N.D.Ga.1984); *In re Moore*, 33 B.R. 72 (Bkrtcy.D.Or.1983); *In re Fickey*, 23 B.R. 586 (Bkrtcy.E.D.Tenn.1982); *In re Beasley*, 23 B.R. 404 (Bkrtcy.E.D.N.C.1982); *In re Hodby*, 18 B.R. 70 (Bkrtcy.W.D.Ky.1982); *In re Haus*, 18 B.R. 413 (Bkrtcy.D.S.C.1982); *In re Kelley*, 17 B.R. 770 (Bkrtcy.E.D.Tenn.1982); *In re Rosen*, 18 B.R. 723 (Bkrtcy.D.S.C.1981); *In re Ashworth*, 16 B.R. 645 (Bkrtcy.C.D.Cal.1981); *In re Penny*, 15 B.R. 124 (Bkrtcy.E.D.Va.1981); *Matter of Johnson*, 15 B.R. 681 (Bkrtcy.W.D.Mo.1981); *In re Trotter*, 12 B.R. 72 (Bkrtcy.C.D.Cal.1981); *In re Bechen*, 11 B.R. 939 (Bkrtcy.D.S.D.1981); *In re Jebbia*, 9 B.R. 542 (Bkrtcy.S.D.Ala.1980); *In re Booker*, 9 B.R. 710 (Bkrtcy.M.D.Ga.1981); *In re Coronado*, 7 B.R. 53 (Bkrtcy.D.Ariz.1980); *In re Krulik*, 6 B.R. 443 (Bkrtcy.M.D.Tenn.1980); *Matter of Jones*, 5 B.R. 655 (Bkrtcy.M.D.N.C. 1980); *In re Mulcahy*, 3. B.R. 454 (Bkrtcy.S.D. Ind.1980); *In re Johnson*, 1 B.C.D. 1023 (Bkrtcy. S.D.Ala.1975); Hansford, *The Purchase Money*

*Security Interest in Inventory versus the After-Acquired Property Interest—A "No Win" Situation*, 20 U.Rich.L.Rev. 235 (1986).

3. *See also In re Staley*, 426 F.Supp. 437 (M.D.Ga. 1977); *In re Trexler*, 97 B.R. 206 (Bkrtcy.E.D.Pa. 1989); *In re Sherman*, No. 87-00134-M04, (unpublished) (Bkrtcy.E.D.N.C.1987); *Matter of Wilson*, 25 B.R. 276 (Bkrtcy.D.Neb.1982); *In re Linklater*, 48 B.R. 916 (Bkrtcy.D.Nev.1985); *Matter of Anderson*, 23 B.R. 130 (Bkrtcy.D.Neb. 1982); *In re Conn*, 16 B.R. 454 (Bkrtcy.W.D.Ky. 1982); *In re Coomer*, 8 B.R. 351 (Bkrtcy.E.D. Tenn.1980).

4. To avoid the perpetuation of possible error in *McCombs*, Code of Ala. § 5-19-9 (1975) (the Mini Code) provides for the application of payments in a consumer finance situation and would apply in all such cases to provide a purchase-money security interest even if the language in the sales and financing agreements should be insufficient for that purpose.

upon, the creditor can repossess only that merchandise which has not been paid in full. There should also be a statement in the Agreement in which the debtor indicates that he understands the purchase-money security interest language of the Agreement and how each of the payments he makes will be applied in order to satisfy the lien against the property.

*Id.* at 4. Based upon these principles, the court finds that the allocation method provided in the Snap–On Tools security agreement does not state which items of collateral are still subject to "purchase-money" status; therefore, the contract does not provide an adequate allocation method.

 We now inquire whether the State of Alabama provides a statutory allocation method. Ala.Code § 5–19–9 (1975) [5] provides for the application of payments when the buyer is indebted to the same seller for two or more consumer credit sales. The court finds that this code section cannot apply to the case at hand because Mr. Freeman cannot be classified as a consumer in this context. Ala.Code § 5–19–1(2) (1975) defines "consumer,"

as one in which the party to whom credit is extended by loan, sale of property or services, lease or otherwise is a natural person and the money, property, or services which are the subject of the transaction are primarily for personal, family, household or agricultural purposes.

The contract between Snap–On Tools and Mr. Freeman expressly provided that,

Purchaser warrants that the described property is being bought for use primarily as equipment in the commercial conduct and operation of his trade and business.

This language clearly shows that the transaction was not of "consumer credit" nature. *Simmons v. American Mutual Liability Insurance,* 433 F.Supp. 747 (S.D.Ala. 1976), *aff'd,* 560 F.2d 1021, 1022 (5th Cir. 1977).

The court finds that Snap–On Tools Corporation is in possession of a security agreement that consolidated "purchase money security interests" with antecedent debt. The court also finds that neither the security agreement nor a statute provides the court with an adequate allocation method which can be used to identify the tools subject to the "purchase-money" status. Because of this, the Court holds that Snap–On Tools Corporation has a nonpossessory, nonpurchase-money security interest which can be avoided by Mr. Freeman under 11 U.S.C. § 522(f)(2)(B).

The Debtor's Motion to Avoid Nonpossessory, Nonpurchase-money Security Interest is GRANTED. The Creditor's Motion for Relief from Stay is DENIED. Judgment is contemporaneously and separately entered accordingly.

IT IS SO ORDERED this the 9th day of October, 1990.

5. § 5–19–9. Application of payments when buyer indebted to same seller for two or more consumer credit sales.

When the buyer is indebted to a particular seller for two or more consumer credit sales of goods and the goods which were the subject of two or more sales secure the consumer's total debt to the seller, the security shall be discharged by applying the buyer's payments as they are received by the seller or the seller's assignee to the portions of the debt in the order in which they were incurred. To the extent that debts are paid according to the preceding sentence, security interests in items of property terminate as the debt originally incurred with respect to each item is paid. Payments received by the seller upon a revolving charge account are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been applied first to the payment of credit service charges in the order of their entry to the account and then to the payment of debts in the order in which the entries to the account showing the debts were made. If the debts consolidated arose from two or more consumer sales made on the same day, payments received by the seller are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been applied first to the payment of the smallest debt. This section shall not apply to two or more consumer credit sales made by the same seller to the same buyer when the debts have been assigned to different and unrelated persons for value and the assignment was bona fide and not for the purpose of violating this section. (Acts 1971, No. 2052, p. 3290, § 5.)

/s/ <u>Clifford Fulford</u>
CLIFFORD FULFORD
United States Bankruptcy Judge